PASQUALE A. BARBATO *v.* J. & M. CORPORATION
(12025)

SPEZIALE, C. J., PETERS, HEALEY, PARSKEY and SHEA, Js.

Argued April 3—decision released August 14, 1984

*Bruce L. Levin,* with whom, on the brief, was *Robert Kapusta,* for the appellant (respondent John P. McGill).

*Richard K. Greenberg,* assistant attorney general, with whom were *Francesca Borges,* law student intern, and, on the brief, *Joseph I. Lieberman,* attorney general, for the appellee (plaintiff).

SPEZIALE, C. J. The respondent witness, John P. McGill, has appealed from the order of the trial court granting the application of the plaintiff, Pasquale A. Barbato, deputy commissioner of revenue services, to compel testimony in an inquiry conducted by the department of revenue services. Because we hold that the order granting the application to compel testimony is not a final judgment, we dismiss this appeal sua sponte.

In 1980, the department of revenue services of the state of Connecticut notified by letter the J. & M. Corporation, a Delaware corporation, that it had a tax liability of $4590.73 arising from the purchase or use of a boat. At an administrative hearing convened on July 15, 1982, John P. McGill, president of J. & M. Corporation, was subpoenaed by the plaintiff and appeared with counsel but refused to answer any questions concerning J. & M. Corporation and invoked his constitutional privilege against self-incrimination.[1] The plaintiff then applied to the Superior Court to compel testimony pursuant to General Statutes § 12-429.[2] The trial court

---

[1] At the hearing, John P. McGill answered preliminary questions concerning his name and the service of a subpoena. When he was asked, "[a]re you familiar with J. & M. Corporation?" the respondent refused to testify further.

[2] General Statutes § 12-429 provides: "The commissioner and any agent of the commissioner authorized to conduct any inquiry, investigation or hearing hereunder may administer oaths and take testimony under oath relative to the matter of inquiry or investigation. At any hearing ordered by the commissioner, the commissioner or his agent authorized to conduct such hearing and having authority by law to issue such process may subpoena witnesses and require the production of books, papers and documents pertinent to such inquiry. No witness under subpoena authorized to be issued by the provisions of this chapter shall be excused from testifying or from producing books or papers on the ground that such testimony or the production of such books or other documentary evidence would tend to incriminate

denied the respondent's motion to quash and strike the application. The respondent has appealed from the order granting the plaintiff's application to compel testimony.[3]

It is well established that an appeal brought pursuant to General Statutes § 52-263 lies only from a final judg-

him, but such evidence or the books or papers so produced shall not be used in any criminal proceeding against him. If any person disobeys such process or, having appeared in obedience thereto, refuses to answer any pertinent question put to him by the commissioner or his authorized agent, or to produce any books and papers pursuant thereto, the commissioner or such agent may apply to the superior court for the judicial district wherein the taxpayer resides or wherein the business has been conducted, or to any judge of said court if the same is not in session, setting forth such disobedience to process or refusal to answer, and said court or such judge shall cite such person to appear before said court or such judge to answer such question or to produce such books and papers and, upon his refusal so to do, shall commit such person to a community correctional center until he testifies, but not for a longer period than sixty days. Notwithstanding the serving of the term of such commitment by any person, the commissioner may proceed in all respects with such inquiry and examination as if the witness had not previously been called upon to testify. Officers who serve subpoenas issued by the commissioner or under his authority and witnesses attending hearings conducted by him hereunder shall receive fees and compensation at the same rates as officers and witnesses in the courts of this state, to be paid on vouchers of the commissioner on order of the comptroller from the appropriation for the administration of this chapter.''

[3] The respondent initially appealed from the denial of his motion to quash and strike the application for an order to compel testimony. Counsel for both parties represented in their briefs that the trial court had granted the application to compel testimony even though the record shows that the application was not formally granted at the time of the denial of the motion to quash and strike the application. At oral argument, counsel asserted that the trial court's failure to grant the application at that time was an inadvertent oversight. The plaintiff's application was not formally granted until April 2, 1984, the day before oral argument was to be heard on this appeal, when the oversight was called to the attention of the trial court. The plaintiff attempted to amend his appeal to include the judgment granting the application. Due to the unusual procedural circumstances and because of our ultimate holding dismissing the appeal sua sponte, we have treated the April 2, 1984 order granting the application as nunc pro tunc. We hasten to add in admonition that, ordinarily, appeals may not be amended on the eve of oral argument.

ment.[4] *State* v. *Curcio,* 191 Conn. 27, 30, 463 A.2d 566 (1983). An order is final and appealable "(1) where the order or action terminates a separate and distinct proceeding, or (2) where the order or action so concludes the rights of the parties that further proceedings cannot affect them." *State* v. *Curcio,* supra, 31. This order, compelling testimony pursuant to General Statutes § 12-429, is not such a final order.

The respondent contends that the order granting the application is the final step under the statutory section and is thus appealable. A plain reading of the statute and order, however, shows that there are further proceedings to be undertaken. The trial court's memorandum of law on the respondent's motion to quash and strike the application states simply that the respondent may not invoke a blanket constitutional privilege against self-incrimination. In granting the application, the trial court is ordering the respondent to appear before the trial court to answer questions. See General Statutes § 12-429. This respondent, however, has not yet appeared before the trial court to answer any ques-

---

[4] General Statutes § 52-263, as amended by Public Acts, Spec. Sess., June, 1983, No. 83-29, § 8, provides: "Upon the trial of all matters of fact in any cause or action in the superior court, whether to the court or jury, or before any judge thereof when the jurisdiction of any action or proceeding is vested in him, if either party is aggrieved by the decision of the court or judge upon any question or questions of law arising in the trial, including the denial of a motion to set aside a verdict, he may appeal to the [supreme] court HAVING JURISDICTION from the final judgment of the court or of such judge, or from the decision of the court granting a motion to set aside a verdict, except in small claims cases, which shall not be appealable, AND appeals [within the jurisdiction of the appellate session of the superior court] as provided in section [51-197d] *8-8,* AS AMENDED BY SECTION 13 OF THIS ACT, SECTION 8-9, AS AMENDED BY SECTION 19 OF THIS ACT, SECTION 8-28, AS AMENDED BY SECTION 59 OF THIS ACT AND SECTION 8-30, AS AMENDED BY SECTION 60 OF THIS ACT. [administrative appeals as provided in section 51-197b, and except as otherwise provided by statute.]" See Public Acts, Spec. Sess., June, 1983, No. 83-29, § 3 (amending General Statutes § 51-197a); Public Acts, Spec. Sess., June, 1983, No. 83-29, § 2 (amending General Statutes § 51-199).

tions. The respondent is appealing from an order requiring his presence in court to answer questions even before such questions have been asked. It is not known whether the respondent will refuse to answer each and every question put to him by the trial court. Nor is it known whether the trial court, upon proper consideration, would uphold the privilege as to each question, deny the privilege as to each question, or uphold the privilege as to some questions. Even after the respondent appears in court, General Statutes § 12-429 provides for further proceedings in that, if the respondent fails to comply with the trial court's order, the trial court "shall commit such person to a community correctional center until he testifies." The statutory proceedings were not yet concluded upon the granting of the plaintiff's application to compel testimony.

In this case, the order granting the application is analogous to a trial court's ordering compliance with discovery procedures. Such orders generally are not appealable. See *State* v. *Grotton,* 180 Conn. 290, 429 A.2d 871 (1980); *Chrysler Credit Corporation* v. *Fairfield Chrysler-Plymouth, Inc.,* 180 Conn. 223, 429 A.2d 478 (1980); *State* v. *Kemp,* 124 Conn. 639, 1 A.2d 761 (1938). The initial determination of discovery orders "does not so conclude the rights of the appealing party that further proceedings cannot affect those rights." *State* v. *Grotton,* supra, 292. Just as we require that those ordered to comply with discovery be found in contempt of court before we consider an appeal, so too must this respondent await the sanction of the trial court before appellate review.

In discovery and analogous situations, the trial court must balance competing concerns. One party may assert that certain information is necessary for a full and fair determination of the action. Another party may desire to keep the information confidential. The judicial system requires the efficient processing of cases and the

avoidance of disrupting, piecemeal appeals. See *State* v. *Curcio,* supra. The interests of the judicial system would be impaired if parties could interminably delay actions by appeals from interlocutory rulings.

The party seeking to withhold information may have strong needs to keep that information confidential. Due to the interests of the other parties and the judicial system, however, that person may be compelled to disclose the information or be held in contempt. If the party chooses to disclose the information upon order of the trial court and that information is used against him or her and results in an adverse judgment, the party may then appeal and challenge the propriety of the trial court's order to disclose the information. If the party chooses to keep the information confidential, even after being ordered by the trial court to divulge it, he or she may be held in contempt. A judgment of contempt is a final, reviewable judgment.

On appeal from the judgment of contempt this court can review " 'questions of jurisdiction such as whether the court had authority to impose the punishment inflicted and whether the act or acts for which the penalty was imposed could constitute a contempt.' *State* v. *Jackson,* 147 Conn. 167, 170, 158 A.2d 166 (1960); see *Leslie* v. *Leslie,* 174 Conn. 399, 402–403, 389 A.2d 747 (1978); *Potter* v. *Board of Selectmen,* 174 Conn. 195, 197, 384 A.2d 369 (1978); *Tobey* v. *Tobey,* 165 Conn. 742, 746, 345 A.2d 21 (1974); *Stoner* v. *Stoner,* 163 Conn. 345, 359, 307 A.2d 146 (1972); *Goodhart* v. *State,* 84 Conn. 60, 63, 78 A. 853 (1911)." *Papa* v. *New Haven Federation of Teachers,* 186 Conn. 725, 731, 444 A.2d 196 (1982); see *Hartford Federal Savings & Loan Assn.* v. *Tucker,* 192 Conn. 1, 469 A.2d 778 (1984). This scope of review "is sufficiently broad to encompass many claims of error which may not appear on their face to

be jurisdictional in nature. See *Baldwin* v. *Miles*, [58 Conn. 496, 20 A. 618 (1890)]." *Papa* v. *New Haven Federation of Teachers,* supra, 732.

Thus, whether the party divulges the information and suffers adverse consequences or refuses to divulge the information and is held in contempt, the issue is at some point reviewable and the claimed right to confidentiality need not be lost without the opportunity for appellate review.

The respondent's claim that his constitutional privilege against self-incrimination will be lost if we do not review the merits of his appeal at this time is not persuasive. Upon hearing the specific questions the trial court may agree with some or all of the respondent's claims, if any, of privilege. Even if the court directs the respondent to answer a specific question after he has claimed the privilege, the respondent may refuse to answer and may be found in contempt. Only after the respondent has been adjudged to be in contempt are the proceedings against him final. The information would remain confidential and the respondent would then have an appealable final judgment. The respondent's claim is premature.

The appeal is dismissed sua sponte.

In this opinion the other judges concurred.