## JOSEPH ABREU *v.* KARISSA LEONE
### (SC 18048)

Rogers, C. J., and Norcott, Katz, Palmer and Zarella, Js.

Argued February 9—officially released April 28, 2009

*John E. Tucker*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, *Gregory T. D'Auria*, associate attorney general, and *Susan T. Pearlman*, assistant attorney general, for the appellant (intervening plaintiff department of children and families).

*Tushar G. Shah*, with whom, on the brief, was *Jonathan A. Cantor*, for the appellee (defendant).

*Opinion*

KATZ, J. The intervening plaintiff, the department of children and families (department), appeals, upon our grant of certification, from the judgment of the Appellate Court dismissing the department's appeal from the trial court's order compelling the plaintiff, Joseph Abreu, to respond to deposition questions in a separate proceeding brought by the defendant minor child, Karissa Leone, against the department. The sole issue in this certified appeal is whether the Appellate Court properly concluded that the trial court's order compelling the plaintiff to respond to certain deposition questions was not a final judgment and therefore that the Appellate Court lacked jurisdiction over the appeal. We conclude that the Appellate Court improperly dismissed the appeal, and accordingly, we reverse the judgment of that court and remand the case for consideration of the merits of the department's appeal.

The record reveals the following undisputed facts and procedural history. The defendant filed a claim with the claims commissioner seeking permission to bring an action against the department for personal injuries allegedly inflicted by the plaintiff's alleged foster child, Geovanny M.[1] Pursuant to that action, a notice of depo-

---

[1] In this separate proceeding, the defendant minor, through her parent and next friend, Marjory Leone, filed a notice of claim with the claims commissioner seeking permission to bring an action against the state and the department, "under the auspices of the [s]tate," as respondents. *Leone v. State*, File No. 19984 (February 9, 2004). The defendant's claim alleged that, on November 7, 2003, she was injured while playing on the playscape

sition and subpoena duces tecum was issued to the plaintiff. The plaintiff thereafter filed this independent action in the Superior Court, by summons and complaint, asking the court to quash the subpoena and for a protective order from the deposition on the ground that he is prohibited, under General Statutes § 17a-28,[2] from disclosing the matters sought to be discovered in the underlying proceeding, namely, information about a foster child. The department intervened as a party plaintiff in the Superior Court action and filed a brief in support of the plaintiff's position.

On September 14, 2006, the trial court, *R. Robinson, J.*, issued a decision in favor of the plaintiff and allowing the deposition, but holding that "the language of [§ 17a-28 (b)] clearly prohibits the [plaintiff] from testify[ing] about, or producing copies of documents in his possession which relate to a foster child . . . ." The court, however, allowed the deposition to go forward in light of the fact that the defendant might "seek other information that is not in violation of [§ 17a-28 (b)] . . . ."

of a local school, when Geovanny, a minor child who was a ward of the state, intentionally pushed her into a pole. She alleged that Geovanny had a "history of being disruptive and abusive" and that he resided with his foster parent, the plaintiff. The defendant averred: "It is not known at this time what specific acts or omissions of the [department] may have contributed to the [defendant's] injuries. However, through the process of discovery, it may be determined that said agency knew, or should have known of the assaultive propensities of the foster child in question, and may indeed be liable to the [defendant] for its failure to act in some fashion." Pursuant to General Statutes § 52-572 (a), the defendant alleged that the department was the legal guardian of Geovanny and was liable for damages for the defendant's injury in an amount not to exceed $5000.

[2] General Statutes § 17a-28 (b) provides: "Notwithstanding the provisions of section 1-210, 1-211 or 1-213, records maintained by the department shall be confidential and shall not be disclosed. Such records of any person may only be disclosed, in whole or in part, to any individual, agency, corporation or organization with the consent of the person or as provided in this section. Any unauthorized disclosure shall be punishable by a fine of not more than one thousand dollars or imprisonment for not more than one year, or both."

A deposition of the plaintiff subsequently was held. At the deposition, counsel disagreed about the scope of the trial court's decision. Upon the advice of his attorney and in light of the potential criminal and civil penalties for wrongful disclosure of protected information under § 17a-28 (b), the plaintiff declined to answer some of the questions that were posed to him. The defendant's counsel suggested: "What I think I'm going to do is put my questions on the record, and then file a motion for clarification." In accordance with his stated intention, counsel for the defendant read a number of questions into the record. Counsel for the plaintiff and counsel for the department then objected on the record to each disputed question on the ground that to respond would violate § 17a-28 (b), and the plaintiff declined to answer the disputed questions.[3]

---

[3] Counsel for the plaintiff and the department objected to each of the following questions or requests posed by the defendant's counsel:

1. "[H]ave you seen any [department] documents pertaining to [Geovanny]?"

2. "Do you know [Geovanny]?"

3. "How do you know [Geovanny]?"

4. "How long have you know[n] [Geovanny]?"

5. "What is the capacity of your relationship with [Geovanny]?"

6. "Does [Geovanny] currently reside with you?"

7. "Did [Geovanny] reside with you on November 7, 2003?"

8. "Were you [Geovanny's] foster parent on November 7, 2003?"

9. "If [Geovanny] did reside with you on November 7, 2003, how long prior to that did he reside with you?"

10. "How long after November 7, 2003, did [Geovanny] reside with you?"

11. "Describe [Geovanny's] personality."

12. "Did you ever see or hear [Geovanny] acting violently towards anybody else?"

13. "Do you know if [Geovanny] ever got in trouble at school?"

14. "If [Geovanny] did get in trouble at school, what kind of trouble did he get into?"

15. "What happened in any of the instances where [Geovanny] may have gotten in trouble at school?"

16. "Do you know the names of the parents or guardians of any of [Geovanny's] friends or associates?"

17. "If so, what were their names?"

18. "And do you know any of their addresses or [tele]phone numbers?"

19. "Do you know if [Geovanny] ever had any physical altercations with either of them, being his friends, or anyone else other than [the defendant], on or before November 7, 2003?"

Thereafter, the parties filed cross motions, seeking either to compel or to avoid the disclosures and for monetary sanctions.[4] The trial court, *Pittman, J.*, declined to impose monetary sanctions but ordered the plaintiff to answer the disputed questions.[5] The department filed a motion to reargue, which the court denied. The department thereafter appealed from the trial

20. "If the answer to that preceding [question] is in the affirmative, please discuss. Tell me the details of what happened."

21. "Based on your knowledge and relationship with [Geovanny], would you agree that he has assaultive tendencies?"

22. "If your answer to the preceding question was in the affirmative, why do you believe so? If it was in the negative, why don't you believe so?"

23. "If you believe that [Geovanny] has assaultive tendenc[ies], why is that your belief?"

24. "If you do not believe he has an assaultive tendency, why don't you believe so?"

[4] The department joined the plaintiff's motion for sanctions only to the extent that it sought an order barring further deposition of the plaintiff.

[5] The trial court identified the following six questions as the major questions at issue: "How do you know [Geovanny]?"; "How long have you know[n] [Geovanny]?"; "What is the capacity of your relationship with [Geovanny]?"; "Does [Geovanny] currently reside with you?"; "Did [Geovanny] reside with you on November 7, 2003, [and for how long]?"; and "Were you [Geovanny's] foster parent on November 7, 2003?" The court then described the remaining questions as seeking the plaintiff's opinions and observations. It then set forth the following reasoning for its decision: "It is this court's ruling that these questions about the status of the [plaintiff] as a foster parent and the observations and opinions of the [plaintiff] about [Geovanny] are not ones that come under the confidentiality provisions of . . . § 17a-28 (b). The court can locate no statute, state regulation, or [department] protocol that prevents a foster parent from divulging the fact that he or she is a foster parent. The fact that a child's legal guardian is the state . . . or that the child resides with a foster parent is not confidential under . . . § 17a-28 (b).

"And patently, the observations of a witness are not given confidential status by this statute. While a foster parent's observations of a child's behavior may find their way into a [department] report, such observations may also find their way into a newspaper (hopefully for good behavior) or into a lawsuit, like the one proposed to be commenced here. . . .

"[The six questions identified] above are ones which [the plaintiff] must answer. Further questions about the [plaintiff's] observations, if any, of [Giovanny], or questions about the [plaintiff's] opinions must be answered provided the answers are based on personal knowledge and observation of the child."

court's decision to the Appellate Court.[6] The plaintiff did not file a separate appeal, relying instead on the department to protect his confidentiality interests underlying §17a-28 (b). The Appellate Court sua sponte issued an order directing the parties to appear and give reasons, if any, why the appeal should not be dismissed for lack of a final judgment, citing *Barbato* v. *J. & M. Corp.*, 194 Conn. 245, 478 A.2d 1020 (1984), and *Presidential Capital Corp.* v. *Reale*, 240 Conn. 623, 692 A.2d 794 (1997). After a hearing, the Appellate Court dismissed the appeal. This court thereafter granted the department's petition for certification to appeal, limited to the following question: "Did the Appellate Court properly dismiss this appeal for lack of a final judgment?" *Abreu* v. *Leone*, 285 Conn. 904, 938 A.2d 592 (2007). We conclude that the appeal was from a final judgment.

We begin with well settled jurisprudence. The subject matter jurisdiction of our appellate courts is limited by statute to appeals from final judgments. General Statutes § 52-263; see generally W. Horton & K. Bartschi, Connecticut Practice Series: Connecticut Rules of Appellate Procedure (2009 Ed.) § 61-1; C. Tait & E. Prescott, Connecticut Appellate Practice and Procedure (3d Ed. 2000) § 3.1 et seq. The legislature may, however, deem otherwise interlocutory actions of the trial courts to be final judgments, as it has done by statute in limited circumstances. See, e.g., General Statutes § 31-118 (authorizing appeals from temporary injunctions in labor dispute); General Statutes § 52-278*l* (authorizing appeals from prejudgment remedies); see also W. Horton & K. Bartschi, supra, §§ 61-2 through 61-11. Alternatively, the courts may deem interlocutory orders or rulings to "have the attributes of a final judg-

---

[6] The department filed its brief on the merits in the Appellate Court on September 6, 2007, and the Appellate Court issued its order of dismissal on October 18, 2007.

ment" if they fit within either of the two prongs of the test set forth in *State* v. *Curcio*, 191 Conn. 27, 31, 463 A.2d 566 (1983). (Internal quotation marks omitted.) *Brown & Brown, Inc.* v. *Blumenthal*, 288 Conn. 646, 653, 954 A.2d 816 (2008). Under *Curcio*, "the landmark case in the refinement of final judgment jurisprudence"; *Wells Fargo Bank of Minnesota, N.A.* v. *Jones*, 85 Conn. App. 120, 124, 856 A.2d 505 (2004); *Sharon Motor Lodge, Inc.* v. *Tai*, 82 Conn. App. 148, 153, 842 A.2d 1140, cert. denied, 269 Conn. 908, 852 A.2d 738 (2004); interlocutory orders are immediately appealable if the order or ruling (1) terminates a separate and distinct proceeding or (2) so concludes the rights of the parties that further proceedings cannot affect them. *State* v. *Curcio*, supra, 31.

"The first prong of the *Curcio* test . . . requires that the order being appealed from be severable from the central cause of action so that the main action can proceed independent of the ancillary proceeding. . . . If the interlocutory ruling is merely a step along the road to final judgment then it does not satisfy the first prong of *Curcio*. . . . Obviously a ruling affecting the merits of the controversy would not pass the first part of the *Curcio* test. The fact, however, that the interlocutory ruling does not implicate the merits of the principal issue at the trial . . . does not necessarily render that ruling appealable. It must appear that the interlocutory ruling will not impact directly on any aspect of the [action]." (Citations omitted; internal quotation marks omitted.) *Hartford Accident & Indemnity Co.* v. *Ace American Reinsurance Co.*, 279 Conn. 220, 225–26, 901 A.2d 1164 (2006).

"The second prong of the *Curcio* test focuses on the nature of the right involved. It requires the parties seeking to appeal to establish that the trial court's order threatens the preservation of a right already secured to them and that that right will be irretrievably lost

and the [parties] irreparably harmed unless they may immediately appeal. . . . One must make at least a colorable claim that some recognized statutory or constitutional right is at risk." (Citation omitted; internal quotation marks omitted.) *Chadha* v. *Charlotte Hungerford Hospital*, 272 Conn. 776, 785–86, 865 A.2d 1163 (2005). Moreover, "when a statute vests the trial court with discretion to determine if a particular [party] is to be accorded a certain status, the [party] may not invoke the rights that attend the status as a basis for claiming that the court's decision not to confer that status deprives the [party] of protections to which [it] is entitled. . . . The right itself must exist independently of the order from which the appeal is taken." *State* v. *Longo*, 192 Conn. 85, 92–93, 469 A.2d 1220 (1984).

The department claims that the trial court's order compelling the plaintiff to answer the disputed questions is immediately appealable under both prongs of the *Curcio* test. Specifically, the department contends that the Appellate Court had jurisdiction to consider this appeal because the trial court order in the present case terminated a separate and distinct proceeding and so concluded the department's rights and the plaintiff's rights by forcing the disclosure of privileged information in violation of § 17a-28 that further proceedings could not remedy. The department contends that the cases on which the Appellate Court relied, *Barbato* v. *J. & M. Corp.*, supra, 194 Conn. 245, and *Presidential Capital Corp.* v. *Reale*, supra, 240 Conn. 623, in which the only issue properly before the court was whether the case fell within the first prong of *Curcio*, are distinguishable. It further contends that the present case more closely resembles *Lougee* v. *Grinnell*, 216 Conn. 483, 487, 582 A.2d 456 (1990), wherein this court had concluded that the first prong of *Curcio* was satisfied.

The defendant contends in response that, because an order issued upon a motion for discovery ordinarily

is not appealable because it does not constitute a final judgment, at least in civil actions; see *Presidential Capital Corp.* v. *Reale,* supra, 240 Conn. 625; *Barbato* v. *J. & M. Corp.,* supra, 194 Conn. 249; *Chrysler Credit Corp.* v. *Fairfield Chrysler-Plymouth, Inc.,* 180 Conn. 223, 226, 429 A.2d 478 (1980); the Appellate Court properly dismissed the appeal in the present case. Additionally, the defendant asserts that the department's contention that the plaintiff's answers to the questions at issue would cause irreparable harm to Geovanny or the department is "purely conjectural."

For the reasons that follow, we conclude that the first *Curcio* prong is satisfied. We therefore conclude that the Appellate Court improperly dismissed the appeal. In light of this conclusion, we need not address the parties' arguments regarding the second prong of *Curcio*.

We begin with a discussion of the cases on which the Appellate Court relied. In *Barbato* v. *J. & M. Corp.,* supra, 194 Conn. 246, the department of revenue services had notified the defendant corporation that it had a tax liability. At an administrative hearing, the corporation's president (witness) was subpoenaed by the department of revenue services and appeared with counsel but refused to answer any questions concerning the corporation, invoking his constitutional privilege against self-incrimination. Id. The department of revenue services then applied to the Superior Court to compel the witness' testimony pursuant to General Statutes § 12-429. Id. The witness moved to quash and to strike the application, which the trial court denied. Id., 246–47. The witness appealed from the order granting the department of revenue service's application to compel his testimony. Id., 247.

In dismissing the appeal in *Barbato*, this court relied on the statute and the trial court order to conclude that

there were further proceedings to be undertaken. "The trial court's memorandum of law on the [witness'] motion to quash and strike the application states simply that the [witness] may not invoke a blanket constitutional privilege against self-incrimination. In granting the application, the trial court is ordering the [witness] to appear before the trial court to answer questions. See General Statutes § 12-429. This [witness], however, has not yet appeared before the trial court to answer any questions. The [witness] is appealing from an order requiring his presence in court to answer questions even before such questions have been asked. It is not known whether the [witness] will refuse to answer each and every question put to him by the trial court. Nor is it known whether the trial court, upon proper consideration, would uphold the privilege as to each question, deny the privilege as to each question, or uphold the privilege as to some questions. Even after the [witness] appears in court . . . § 12-429 provides for further proceedings in that, if the [witness] fails to comply with the trial court's order, the trial court shall commit such person to a community correctional center until he testifies. The statutory proceedings were not yet concluded upon the granting of the plaintiff's application to compel testimony." (Internal quotation marks omitted.) *Barbato* v. *J. & M. Corp.*, supra 194 Conn. 248–49. "Thus, whether the party divulges the information and suffers adverse consequences or refuses to divulge the information and is held in contempt, the issue is at some point reviewable and the claimed right to confidentiality need not be lost without the opportunity for appellate review." Id., 251.

In *Presidential Capital Corp.* v. *Reale*, supra, 240 Conn. 626, following this court's affirmance of a jury verdict in a previous action for breach of contract for failure to pay a commission, the plaintiff invoked General Statutes § 52-351b in order to discover additional

assets of the defendant debtor, from whom the plaintiff had been unable to collect a significant portion of the judgment. To facilitate such discovery, the plaintiff served postjudgment interrogatories pursuant to § 52-351b (a) on the defendant's wife and son. Id. In their answers to these interrogatories, the wife and son indicated that neither of them was in possession of nonexempt personal property belonging to the defendant. Id. Thereafter, pursuant to § 52-351b (c) (2), to satisfy the judgment, the plaintiff filed postjudgment discovery petitions with the trial court, seeking permission to examine the defendant's wife and son before a judge of the Superior Court regarding their knowledge of the defendant's undisclosed assets. Id. Pursuant to § 52-351b (d), the wife and son then sought protective orders to preclude any such discovery proceedings, and, after a hearing, the trial court sustained the plaintiff's objection to the protective orders and ordered the wife and son to submit to an examination by the plaintiff to be conducted before the court. Id.

The defendant's wife and son filed an appeal from the trial court's denial of their motions for protective orders, which the Appellate Court dismissed on the ground that the trial court had not rendered a final judgment. Id., 627. This court affirmed the judgment of the Appellate Court, concluding that, "although § 52-351b creates a proceeding that is separate and distinct from the prior adjudication leading to the judgment debt, the denial of a protective order pursuant to § 52-351b (d) does not terminate this statutory proceeding. The trial court has yet to consider what requests for information, if any, it will direct the [defendant's wife and son] to answer. The [wife and son] have yet to decide what information, if any, they are unwilling or unable to provide. At this juncture, appellate review of the controversy between the plaintiff and the [defendant's wife and son] is premature." Id., 633. Thus, the

theme that emerged from these two cases, as well as others; see *Metropolitan Life Ins. Co.* v. *Aetna Casualty & Surety Co.*, 249 Conn. 36, 46, 730 A.2d 51 (1999); *Melia* v. *Hartford Fire Ins. Co.*, 202 Conn. 252, 255, 520 A.2d 605 (1987); was that an order issued upon a motion for discovery ordinarily is not appealable because it does not constitute a final judgment, at least in civil actions.

Nevertheless, this court allowed an appeal from a discovery order in *Lougee* v. *Grinnell*, supra, 216 Conn. 487. In that case, the trial court had denied a nonparty witness' motion to quash a subpoena to appear at a deposition in Connecticut regarding a lawsuit that had been filed in Texas. Id., 484. This court concluded that the facts satisfied *Curcio*'s first prong and, therefore, the trial court order requiring the witness to appear for the deposition constituted a final judgment that permitted an immediate appeal. Id., 487. Specifically, in the underlying action at issue in *Lougee*, the respondent, Jeannie B. Grinnell, had filed an action in Texas against the American Tobacco Company (American Tobacco). Id., 484–85. She filed a notice of deposition directed at American Tobacco but sought therein to depose the petitioner, Virginius B. Lougee, the former chief executive officer of American Tobacco. Id., 485. After the Texas trial court determined that American Tobacco could not be compelled to produce a former employee such as Lougee, Grinnell obtained an order from the Texas court commissioning a Connecticut notary public to depose Lougee as a material witness in Connecticut. Id., 485–86. The trial court in Connecticut thereafter authorized the issuance of a subpoena compelling Lougee's appearance. Id., 486. Lougee unsuccessfully moved to quash the subpoena in the trial court and subsequently appealed from that court's order. Id.

This court concluded in *Lougee* that the appeal fell within the first prong of *Curcio* because the separate

and distinct judicial proceeding concerning Grinnell's deposition subpoena had terminated when the trial court issued the order that was appealed. Id., 487. In reaching that determination, this court focused on the Connecticut trial court proceeding on Lougee's motion, rather than the Texas litigation, recognizing that "the sole judicial proceeding instituted in Connecticut concerned the propriety of Grinnell's deposition subpoena, a proceeding that will not result in a later judgment from which [Lougee] can then appeal. . . . Because the separate and distinct judicial proceeding concerning Grinnell's deposition subpoena terminated when the trial court issued the orders appealed, Lougee has appealed from a final judgment . . . ." (Citations omitted; internal quotation marks omitted.) Id. This court subsequently has reaffirmed that the court's focus in determining whether there is a final judgment is on the order immediately appealed, not the underlying action that prompted the discovery dispute. See *Board of Education* v. *Tavares Pediatric Center*, 276 Conn. 544, 553, 888 A.2d 65 (2006) (*"Lougee* . . . correctly construed the proceeding concerning the propriety of Grinnell's deposition subpoena before the Connecticut Superior Court as the underlying action and, likewise, correctly permitted a party to that proceeding to appeal from the trial court's order").

We agree with the department that the present case is distinguishable from *Barbato* and *Presidential Capital Corp.* for several reasons. First, in those cases, the party "[had] not yet appeared before the trial court to answer any questions"; *Barbato* v. *J. & M. Corp.*, supra, 194 Conn. 248–49; and "the trial court [had] yet to consider what requests for information, if any, it will direct the appellants to answer." *Presidential Capital Corp.* v. *Reale*, supra, 240 Conn. 633. Unlike *Presidential Capital Corp.*, in the present case there are no further proceedings before the Superior Court involving the

plaintiff because the questions have been propounded and the trial court unequivocally has ruled what must occur—certain identified questions must be answered. See footnote 5 of this opinion. As the judgment file reflects: "Whereupon, the court . . . having heard the parties, in a written decision dated May 2, 2007, directed [the plaintiff] to answer certain questions enumerated in that decision . . . ." Unlike *Barbato*, in the present case, it *is* known whether the plaintiff will refuse to answer the contested questions put to him by the defendant, and it *is* known whether the trial court will uphold the "privilege" as to the questions.[7] Unlike *Presidential Capital Corp.*, the trial court in the present case has considered what requests for information it will direct the plaintiff to answer, and the plaintiff has decided what information he is unwilling or unable to provide. Therefore, although this court has stated, largely in reliance on *Barbato* and *Presidential Capital Corp.*, that an order issued upon a motion for discovery ordinarily is not appealable because it does not constitute a final judgment, and that a witness' only access to appellate review is to appeal a finding of contempt, a closer examination of those and other discovery related cases convinces us that these cases are more fact specific than would appear at first blush. See, e.g., *Office of the Governor* v. *Select Committee of Inquiry*, 271 Conn. 540, 570 n.18, 858 A.2d 709 (2004) (concluding that, under particular circumstances of that case, it would have been inappropriate to require governor to resist subpoena, thereby risking finding of contempt, and undesirable to place defendant investigative committee in position of having to commence contempt proceedings against head of coordinate branch of government to establish appellate jurisdiction); *CFM of*

---

[7] We recognize that there is a legal distinction, which is not relevant to the present case, between confidential matters and privileged matters. See *State* v. *Kemah*, 289 Conn. 411, 417 n.7, 841 A.2d 1158 (2008).

*Connecticut, Inc.* v. *Chowdhury*, 239 Conn. 375, 402, 685 A.2d 1108 (1996) (concluding that appeal from order imposing monetary sanctions against attorney for bad faith pleading was final order),[8] overruled in part on other grounds by *State* v. *Salmon*, 250 Conn. 147, 154-55, 735 A.2d 333 (1999).

We acknowledge that the plaintiff could challenge the trial court order in the present case later by *again* refusing to answer the questions propounded and thereafter being found in contempt. Because, however, the specific questions have been propounded and the trial court has ruled unequivocally what must occur, we can only regard the posture of the present case as the functional equivalent of that situation. "To read this record any other way would be to blink at reality." *CFM of Connecticut, Inc.* v. *Chowdhury*, supra, 239 Conn. 392. In essence, the defendant is forcing the plaintiff to be held in contempt.

We must recognize that, "although the appellate final judgment rule is based partly on the policy against piecemeal appeals and the conservation of judicial resources"; id., 402–403; like other cases in which we have determined that a contempt finding should not be a predicate to appellate review, there is a counterbalancing factor in this situation. As a foster parent, the plaintiff "play[s] a key role in the system of providing services to children who must live away from their

---

[8] In *Chowdury*, there were policy considerations that supported the conclusion that the sanctions order was a final judgment for purposes of appeal. This court recognized that "[a]n outstanding sanctions order against an attorney in a case that has yet to run its course could very well have deleterious effects on efforts to settle the case. It carries a significant risk of placing the attorney in a potential conflict of interest in negotiating a settlement, because, if the sanctions order is linked to settlement negotiations, [the attorney] may be placed in an ethical dilemma; his view of any settlement proposal would almost certainly be colored by its handling of the [attorney's fees] issue." (Internal quotation marks omitted.) *CFM of Connecticut, Inc.* v. *Chowdury*, supra, 239 Conn. 402.

family of origin when that family cannot provide a positive environment or meet the special needs of the children." Dept. of Children and Families Policy Manual § 36-55-1.5, p. 1. Requiring the postponement of an appeal of the order until the plaintiff, a partner and integral part of the child welfare system, is forced to choose between being found in contempt for his good faith attempt to comply with § 17a-28 (b) and violating that statute, thereby subjecting himself to criminal sanctions, would discourage participation by otherwise willing foster parents and thus undermine the goals of that system. Either option also puts the foster child in jeopardy. We cannot turn a blind eye to the child who risks suffering the embarrassment, stigmatization and emotional harm that can result from the mere disclosure that he or she is under the department's care. Were we to reject the department's final judgment claim and require the plaintiff to subject himself to this Hobson's choice, we would be "elevat[ing] form over substance." *CFM of Connecticut, Inc.* v. *Chowdhury,* supra, 239 Conn. 391.

For similar reasons, it is clear that the trial court order in the present case also terminated a separate and distinct proceeding concluding the *department's* rights by forcing the disclosure of privileged information in violation of § 17a-28 (b) that further proceedings could not remedy. That is because the department, which represents the foster child's interests, cannot force the plaintiff to comply with § 17a-28 (b) and defy the court order, and thus be held in contempt, so that *the department's* concerns finally can be addressed through the appellate process. In other words, the department is at the mercy of the plaintiff and has no other opportunity to protect its interests or the best interests of Geovanny.

Indeed, we note that the motion to quash and for a protective order is the sole judicial proceeding in this

case and the only one from which the plaintiff and the department would have a right to judicial review. Because the plaintiff is not a party to the underlying action, he would have no right of appeal from that proceeding pursuant to § 52-263. See *Board of Education* v. *Tavares Pediatric Center*, supra, 276 Conn. 555 ("[N]either this court nor the Appellate Court has concluded that anything other than a judicial proceeding constitutes an underlying action for purposes of § 52-263. . . . By defining the term party, as it is used in connection with § 52-263, as [one] by or against whom a legal suit is brought . . . the party plaintiff or defendant . . . we have reinforced the principle that an underlying action, for purposes of § 52-263, is limited to a judicial proceeding." [Citations omitted; internal quotation marks omitted.]); *Bergeron* v. *Mackler*, 225 Conn. 391, 391–92 n.1, 623 A.2d 489 (1993) (nonparty to underlying action had no right of review pursuant to § 52-263). Furthermore, because that underlying action is a claim before the office of the claims commissioner against the state; see footnote 1 of this opinion; it is not a judicial proceeding and indeed may not even result in a judicial proceeding if authorization to pursue the action is not given. Therefore, the plaintiff may not ever have a writ of error available; cf. *State* v. *Salmon*, supra, 250 Conn. 167 n.20 (writ of error available when nonparty did not have right to appellate review of judicial proceeding pursuant to § 52-263); and the department may never have a right of appeal.

Accordingly, we agree with the department that, as in *Lougee*, the first prong of *Curcio* has been satisfied because the separate and distinct judicial proceeding concerning the plaintiff's challenge to his deposition notice terminated as to both the plaintiff and the department when the trial court issued the order compelling the plaintiff to answer the contested questions. In reaching that conclusion, we focus on the trial court proceed-

ing on the plaintiff's motion, recognizing that "the sole *judicial* proceeding instituted in Connecticut concerned the propriety of [the defendant's] deposition subpoena [issued to the plaintiff], a proceeding that will not result in a later judgment from which [the plaintiff] can then appeal. . . . Because the separate and distinct *judicial* proceeding concerning [the defendant's] deposition subpoena terminated when the trial court issued the orders appealed," the department has appealed from a final judgment. (Citations omitted; emphasis added; internal quotation marks omitted.) *Lougee* v. *Grinnell*, supra, 216 Conn. 487.

The judgment of the Appellate Court is reversed and the case is remanded to that court for consideration of the merits of the department's appeal.

In this opinion the other justices concurred.