******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

SANDY NIRO *v.* PETER NIRO, JR.
(SC 19045)

Rogers, C. J., and Palmer, Zarella, Eveleigh, McDonald and Espinosa, Js.

*Argued January 16—officially released October 14, 2014*

*Joseph E. Faughnan*, with whom, on the brief, were *Philip G. Kent* and *Gregory P. Muccilli*, for the plaintiffs in error (Anthony Niro and Nanette Niro).

*Steven R. Dembo*, with whom were *Caitlin Kozloski* and, on the brief, *P. Jo Anne Burgh*, for the defendant in error (Sandy Niro).

*Lisa A. Magliochetti*, for the defendant in the underlying action (Peter Niro, Jr.).

*Opinion*

ZARELLA, J. The plaintiffs in error, Anthony Niro and his wife, Nanette Niro (plaintiffs), bring this writ of error seeking reversal of the trial court's judgment denying their respective motions to quash separate but identical subpoenas duces tecum served upon them in the underlying marriage dissolution action by the defendant in error, Sandy Niro (defendant),[1] and ordering them to produce certain financial records. The plaintiffs claim that this court has subject matter jurisdiction over the writ of error because, given their status as nonparty witnesses in the dissolution action, the trial court's order of production constitutes an appealable final judgment. They further claim that they should not be required to comply with the order because the disputed records consist of personal papers and documents that are privileged under the fifth and fourteenth amendments to the United States constitution and article first, § 8, of the Connecticut constitution. The defendant responds that this court lacks subject matter jurisdiction over the writ of error because the order of production was not a final judgment and does not satisfy either prong of the test established in *State* v. *Curcio*, 191 Conn. 27, 463 A.2d 566 (1983), for determining whether an interlocutory order is an appealable final judgment, namely, that the order "terminates a separate and distinct proceeding" or "so concludes the rights of the parties that further proceedings cannot affect them." Id., 31. The defendant also argues that the plaintiffs did not raise their claim regarding privilege in the trial court, they have not properly briefed their state constitutional claim, and, even if these impediments did not exist, their privilege claim would fail on the merits. We conclude that the trial court's order is not an appealable final judgment under the test set forth in *Curcio*, and, accordingly, this court lacks subject matter jurisdiction over the writ of error.

The record reveals the following relevant facts and procedural history. The defendant married Peter Niro, Jr. (Peter Niro), in September, 1991. During the marriage, Peter Niro and his brother, Anthony Niro, became business partners and held controlling membership interests in at least seventeen limited liability companies that owned real estate in Connecticut and Florida. In turn, each company was owned and controlled by a trust created by the brothers. The brothers also jointly owned or held ownership interests in several other business entities. Nanette Niro was the bookkeeper for these companies, trusts and business entities.

Over time, the business and family relationships broke down such that Peter Niro no longer had access to the financial records pertaining to the jointly owned trusts and business entities. The defendant and Peter Niro also came to believe that the plaintiffs and other family members were misappropriating a substantial

portion of Peter Niro's share of the jointly owned assets. Consequently, after the defendant commenced this action in March, 2011, for dissolution of her marriage to Peter Niro, she served a subpoena duces tecum on each of the plaintiffs in November, 2011, seeking the production of all business and personal financial records that might be related to the jointly owned trusts and business entities so that she could obtain a complete understanding of the marital assets available for equitable distribution pursuant to General Statutes § 46b-81.

On December 22, 2011, the plaintiffs filed motions to quash the subpoenas and for protective orders on the ground that the requests were unduly burdensome, unreasonable, oppressive and intended to embarrass and harass them because, among other things, they sought personal financial information from nonparty witnesses that would not lead to evidence admissible in the dissolution proceeding. The trial court denied those motions on January 19, 2012.

Thereafter, the trial court granted the plaintiffs' motions to reargue. A hearing on the motions was held on February 16, 2012, during which the plaintiffs asserted, for the first time, their fifth amendment privilege with respect to their personal financial records. The court denied the motions to reargue and ordered the plaintiffs "to disclose all business records that are the subject of the [defendant's] subpoenas, on or before April 1, 2012, except any records for which a privilege is claimed. Counsel shall keep a log of all items for which a privilege is claimed. The items listed in the log shall be submitted on or before March 22, 2012, and will be adjudicated at a later date." On March 22, 2012, the plaintiffs provided the court with a privilege log listing approximately 150 business records they did not object to disclosing and approximately 100 personal records they objected to disclosing.

On June 1, 2012, the defendant filed another motion seeking production of the personal records and a motion seeking an order of contempt for the plaintiffs' failure to comply with the trial court's prior order to disclose the business records. The plaintiffs responded that the court had not ordered disclosure of their personal records and that they had disclosed the business records in a related action.[2]

Following a hearing on September 6, 2012, the trial court ordered access to the plaintiffs' business records and reserved decision on disclosure of the personal records. On September 17, 2012, the court denied the defendant's motion for contempt and relied on *Fisher* v. *United States*, 425 U.S. 391, 96 S. Ct. 1569, 48 L. Ed. 2d 39 (1976), in granting the motion for an order of production of the plaintiffs' personal records on the ground that the fifth amendment privilege did not apply to those records. The plaintiffs subsequently filed a writ

of error with this court, challenging the trial court's order of production. On November 23, 2012, the trial court issued a memorandum of decision further explaining its reasons for ordering production of the personal records listed in the plaintiffs' privilege log.

We begin our analysis with the jurisdictional claim. The defendant argues that this court does not have subject matter jurisdiction over the writ of error because the trial court's interlocutory order of production was not an appealable final judgment and does not satisfy either prong of the test set forth in *Curcio* for obtaining appellate review. See Practice Book § 72-1 (a) ("[w]rits of error for errors in matters of law only may be brought from a final judgment of the superior court to the supreme court"). The plaintiffs respond that, even if this court does not have subject matter jurisdiction under the first prong of *Curcio*, which they do not concede, it has jurisdiction under the second prong because the order of production so concluded their federal and state constitutional rights that further proceedings could not affect them. We conclude that, under the facts and circumstances of this case, the order of production does not satisfy either prong of *Curcio*, and, therefore, we do not reach the plaintiffs' constitutional claims.

The standard of review is well established. "A determination regarding . . . subject matter jurisdiction is a question of law . . . [and, therefore] our review is plenary." (Internal quotation marks omitted.) *Khan* v. *Hillyer*, 306 Conn. 205, 209, 49 A.3d 996 (2012).

With respect to the governing legal principles, we have stated that, although "[t]he subject matter jurisdiction of our appellate courts is limited by statute to appeals from final judgments . . . [t]he legislature may . . . deem otherwise interlocutory actions of the trial courts to be final judgments, as it has done by statute in limited circumstances. . . . Alternatively, the courts may deem interlocutory orders or rulings to have the attributes of a final judgment if they fit within either of the two prongs of the test set forth in *State* v. *Curcio*, [supra, 191 Conn. 31]. . . . Under *Curcio*, the landmark case in the refinement of final judgment jurisprudence . . . interlocutory orders are immediately appealable if the order or ruling (1) terminates a separate and distinct proceeding or (2) so concludes the rights of the parties that further proceedings cannot affect them. [Id.]

"The first prong of the *Curcio* test . . . requires that the order being appealed from be severable from the central cause of action so that the main action can proceed independent of the ancillary proceeding. . . . If the interlocutory ruling is merely a step along the road to final judgment then it does not satisfy the first prong of *Curcio*. . . . Obviously a ruling affecting the merits of the controversy would not pass the first part

of the *Curcio* test. The fact, however, that the interlocutory ruling does not implicate the merits of the principal issue at the trial . . . does not necessarily render that ruling appealable. It must appear that the interlocutory ruling will not impact directly on any aspect of the [action]. . . .

"The second prong of the *Curcio* test focuses on the nature of the right involved. It requires the parties seeking to appeal to establish that the trial court's order threatens the preservation of a right already secured to them and that that right will be irretrievably lost and the [parties] irreparably harmed unless they may immediately appeal. . . . One must make at least a colorable claim that some recognized statutory or constitutional right is at risk. . . . Moreover, when a statute vests the trial court with discretion to determine if a particular [party] is to be accorded a certain status, the [party] may not invoke the rights that attend the status as a basis for claiming that the court's decision not to confer that status deprives the [party] of protections to which [it] is entitled. . . . The right itself must exist independently of the order from which the appeal is taken." (Citations omitted; internal quotation marks omitted.) *Abreu* v. *Leone*, 291 Conn. 332, 338–40, 968 A.2d 385 (2009).

In the present case, it is undisputed that the trial court's order of production was an interlocutory ruling. Accordingly, this court has jurisdiction over the plaintiffs' writ of error only if the order satisfies the first or second prong of *Curcio*.

With respect to the first prong, even if we presume that the trial court's production order was "a clear and definite discovery order . . . based on the . . . court's final and comprehensive ruling"; *Woodbury Knoll, LLC* v. *Shipman & Goodwin, LLP*, 305 Conn. 750, 761, 48 A.3d 16 (2012); see id., 761–62 (discussing elements necessary to satisfy first prong of *Curcio*); we conclude that the order did not arise from a separate and distinct proceeding because the personal records and documents to which it was directed are required by the trial court in order to resolve the underlying action. See *Abreu* v. *Leone*, supra, 291 Conn. 339.

Section 46b-81 (a) provides in relevant part: "At the time of entering a decree . . . dissolving a marriage . . . the Superior Court may assign to either the husband or wife all or any part of the estate of the other. The court may pass title to real property to either party or to a third person or may order the sale of such real property . . . when in the judgment of the court it is the proper mode to carry the decree into effect." In furtherance of this objective, Practice Book § 25-30 (a) requires the parties to a dissolution action to file with the court a sworn statement of current income, expenses, assets and liabilities. Thus, in order for the trial court to perform its statutory duty of dividing the

marital estate in a fair and equitable manner, it must have a proper understanding of the parties' assets.

As previously discussed, the defendant and Peter Niro claim that the plaintiffs and other family members have misappropriated a substantial share of Peter Niro's business assets.[3] Accordingly, the trial court must have access to the personal records listed in the plaintiffs' privilege log because they may contain information relating to the allegedly misappropriated assets. In other words, without the information contained in the subpoenaed records, the trial court will be unable to determine the true extent and value of the marital estate and, therefore, will be unable to perform its statutory duty of equitably distributing the marital assets in the underlying dissolution action.

The present case is distinguishable from other cases in which we determined that a discovery order did *not* interfere with the underlying proceeding. For example, in *Woodbury Knoll, LLC,* the plaintiffs in the underlying action (Woodbury Knoll) hired the plaintiff in error, Finn, Dixon & Herling, LLP (Finn Dixon), to bring a legal malpractice action against the defendants in error, Shipman & Goodwin, LLP (Shipman), and Carolyn Cavolo, who also were the defendants in the underlying action, for negligent misrepresentation in connection with certain real estate transactions. *Woodbury Knoll, LLC* v. *Shipman & Goodwin, LLP*, supra, 305 Conn. 752–53. Woodbury Knoll was specifically seeking reimbursement for damages incurred because of Shipman's and Cavolo's failure to discover certain fraud for which Woodbury Knoll incurred damages, "which consisted of settlement payments in the amount of $2,917,000 and attorney's fees paid to Finn Dixon in the amount of $1,371,647.60 . . . ." Id., 753. Following commencement of the underlying action, Shipman and Cavolo served a notice of deposition and a subpoena duces tecum on the custodian of Finn Dixon's records, seeking all records and documents relating to Finn Dixon's representation of Woodbury Knoll in the underlying action up to the date of the subpoena. See id. After Finn Dixon and Woodbury Knoll moved to quash the subpoena and for protective orders, Shipman and Cavolo objected and moved to compel production of the records and documents. Id., 754. The trial court ultimately overruled Finn Dixon's objection to the subpoena, denied its motion to quash, and granted Shipman and Cavolo's motion to compel (discovery order). Id. Finn Dixon then brought a writ of error to this court, claiming that the trial court's discovery order was improper. Id. In considering whether the discovery order satisfied the first prong of *Curcio*, we concluded that the order terminated a separate and distinct proceeding not only because it was "clear and definite" and was based on a "final and comprehensive ruling"; id., 761; but also, significantly, because "Finn Dixon [was] not involved in any way with the lawsuit between [Woodbury Knoll]

and [Shipman and Cavolo]. Finn Dixon [was] involved only insofar as its records custodian [had] been ordered to comply with the discovery order." Id., 762. We therefore granted the writ of error.[4] Id., 786.

Similarly, in *Briggs* v. *McWeeny*, 260 Conn. 296, 298, 796 A.2d 516 (2002), the plaintiff in error, Carole W. Briggs, an attorney, brought a writ of error challenging the findings of the defendant in error, Honorable Robert F. McWeeny (Judge McWeeny), that she had violated the Rules of Professional Conduct in her representation of the plaintiff in the underlying action (Amity High School) and Judge McWeeny's order disqualifying her from continuing to represent Amity High School in the pending litigation. Id., 298–99. The challenged findings included that Briggs had obstructed another party's access to evidence and had asked a person other than a client to refrain from giving relevant information to another party. See id., 304–305. Judge McWeeny claimed that the disqualification order was an interlocutory order from which Briggs could not appeal because it was intertwined with the central evidentiary issue in the underlying litigation. Id., 313–14. We disagreed, concluding that the focus of the misconduct proceeding was not on the disputed evidentiary issue in the underlying litigation but on Briggs' attempt to alter, destroy or conceal a document with potential evidentiary value. Id., 315–16. We further observed that the fact that the sanction had taken effect immediately rather than being delayed until the conclusion of the trial counseled against a finding that the disqualification order was so intertwined with the underlying proceeding that it did not constitute a final judgment. Id., 316.

The discovery order in the present case, unlike the orders in *Woodbury Knoll*, *LLC*, and *Briggs*, is intertwined with the underlying dissolution proceeding because the information subject to disclosure will contribute to the trial court's knowledge of Peter Niro's assets and its ability to perform its statutory duty of equitably distributing the marital estate pursuant to § 46b-81. Accordingly, we conclude that the trial court's order of production does not satisfy the first prong of *Curcio*.

We further conclude that the order does not satisfy the second prong of *Curcio* because it does not so conclude the rights of the plaintiffs that further proceedings will not affect them. Ordinarily, "if a witness asserts a privilege to withhold testimony to which the court and the parties may be entitled, and the court does not uphold that privilege, the witness' only access to appellate review is to appeal a finding of contempt. . . . The scope of appellate review of such a contempt finding would be sufficiently broad to encompass many claims of error which may not appear on their face to be jurisdictional in nature." (Citation omitted; internal quotation marks omitted.) *Presidential Capital Corp.*

v. *Reale*, 240 Conn. 623, 630, 692 A.2d 794 (1997).

In the present case, the trial court's order of production does not so conclude the rights of the plaintiffs that further proceedings will not affect them because the plaintiffs may continue to disobey the order of production and be held in contempt. See *Barbato* v. *J. & M. Corp.*, 194 Conn. 245, 249, 478 A.2d 1020 (1984) (order granting application to compel testimony "does not so conclude the rights of the appealing party that further proceedings cannot affect those rights" [internal quotation marks omitted]). "A judgment of contempt is a final, reviewable judgment." Id., 250. As a result, further proceedings are available from which the plaintiffs may appeal without having to reveal the contents of the records. See id., 251 (privileged information sought remains confidential throughout contempt proceeding).

The writ of error is dismissed.

In this opinion ROGERS, C. J., and PALMER, EVELEIGH and ESPINOSA, Js., concurred.

[1] Sandy Niro and Peter Niro, Jr. (Peter Niro), are the plaintiff and the defendant, respectively, in the underlying marital dissolution action. In October, 2012, Sandy Niro and Peter Niro filed separate motions to dismiss the plaintiffs' writ of error for lack of a final judgment, which we denied without prejudice on December 12, 2012. We also denied the plaintiffs' motion to strike Peter Niro's October 25, 2012 statement of alternative grounds for affirmance of the trial court's order, in which the plaintiffs argued that Peter Niro did not become a party to the writ of error when they served him pursuant to Practice Book § 72-3 (c) with a copy of the writ that had been served on Sandy Niro. We now conclude, however, that Peter Niro is not a proper party to the writ of error because the rules of practice do not provide that, by serving a party in the underlying action with a copy of the writ of error, the party also becomes a party to the writ of error. Accordingly, we have not considered Peter Niro's brief in reaching our decision on the plaintiffs' writ of error.

[2] In the related civil action brought by Peter Niro against Anthony Niro, Peter Niro claimed that Anthony Niro and Nanette Niro misappropriated funds from the jointly owned businesses.

[3] As previously noted, the defendant's misappropriation claim is also the basis for a corresponding civil action that is pending. See footnote 2 of this opinion.

[4] Although the court did not discuss whether the information sought in the discovery order was "intertwined" with the underlying proceeding, we note that, because Woodbury Knoll was seeking damages for expenses already incurred, the court did not need the information subject to the order to resolve the issues in the underlying legal malpractice action. Accordingly, the discovery order in *Woodbury Knoll, LLC*, was not intertwined with the underlying proceeding.

We disagree with the concurring justice's conclusion to the contrary and with his assertion that the court should use this case to reconsider and overrule its decision in *Woodbury Knoll, LLC*. In addition to the fact that neither of the parties has raised or briefed this issue, it would make no sense to reconsider our decision in *Woodbury Knoll, LLC*, in the present case because our legal analysis and conclusions do not depend on whether the discovery order in *Woodbury Knoll, LLC*, was intertwined with the underlying action, but, rather, on the fact that the trial court needs the personal records and documents sought by the defendant in order to perform its statutory duty under § 46b-81. It thus would be inappropriate for this court to address the concurring justice's contention that *Woodbury Knoll, LLC*, should be overruled in the present case.