## PRESIDENTIAL CAPITAL CORPORATION *v.*
## ANTONIO REALE
## (15406)

Callahan, C. J., and Berdon, Norcott, McDonald and Peters, Js.

---

624

Argued December 6, 1996—officially released April 29, 1997

*Kerry M. Wisser,* with whom, on the brief, were *Richard P. Weinstein* and *Nathan A. Schatz,* for the appellants (nonparty witnesses).

*Julia B. Morris,* with whom was *Michael D. O'Connell,* for the appellee (plaintiff).

PETERS, J. The general rule established by our case law is that an interlocutory order requiring a witness to submit to discovery is not a final judgment and, therefore, is not immediately appealable. The sole question in this certified appeal is whether General Statutes § 52-351b[1] provides a different rule, authorizing immedi-

[1] General Statutes § 52-351b provides in relevant part: "Discovery by judgment creditor. (a) A judgment creditor may obtain discovery from the judgment debtor, or from any third person he reasonably believes, in good faith, may have assets of the judgment debtor, or from any financial institution to the extent provided by this section, of any matters relevant to satisfaction of the money judgment. The judgment creditor shall commence any discovery proceeding by serving an initial set of interrogatories, in a prescribed form containing such questions as to the assets and employment of the judgment debtor as may be approved by the judges of the Superior Court or their designee, on the person from whom discovery is sought. . . . Questions contained in the interrogatory form shall be in clear and simple language and shall be placed on the page in such manner as to leave space under each question for the person served to insert his answer. Such person shall answer the interrogatories and return them to the judgment creditor within thirty days of the date of service. . . . With respect to assets, the person served is required to reveal information concerning the amount, nature and location of the judgment debtor's nonexempt assets up to an amount clearly sufficient in value to ensure full satisfaction of the judgment with interest and costs, provided disclosure shall be first required as to assets subject to levy or foreclosure within the state. . . .

"(c) On failure of a person served with interrogatories to, within the thirty days, return a sufficient answer or disclose sufficient assets for execution, or on objection by such person to the interrogatories, the judgment creditor may move the court for such supplemental discovery orders as may be necessary to ensure disclosure including (1) an order for compliance with the interrogatories or authorizing additional interrogatories and (2) an order for production or for examination of the judgment debtor or third person, provided any such examination shall be conducted before the court. The court may order such discovery as justice requires provided the order shall contain a notice that failure to comply therewith may subject the person served to being held in contempt of court.

"(d) Any party from whom discovery is sought may seek a protective order pursuant to section 52-400a."

General Statutes § 52-400a, in turn, provides in relevant part: "Protective order by court. . . . (a) On motion of a . . . third person from whom discovery is sought, and for good cause shown, or on its own motion, the court may make any order which justice requires to protect such debtor or

ate appellate review, in the event of a trial court's denial of a protective order to shield a witness from discovery in statutory postjudgment proceedings.

In an action for breach of contract for failure to pay a commission, the plaintiff, Presidential Capital Corporation, obtained a judgment in the amount of $375,000 against the defendant, Antonio Reale. This court, in a previous appeal describing the controversy between these parties, sustained a jury verdict in the plaintiff's favor. *Presidential Capital Corp.* v. *Reale*, 231 Conn. 500, 652 A.2d 489 (1994). For present purposes, we note only that it is undisputed that the plaintiff has been unable to collect a significant portion of the judgment from the defendant.

The plaintiff has invoked § 52-351b in order to discover additional assets of the defendant. To facilitate such discovery, in September, 1995, it served postjudgment interrogatories pursuant to § 52-351b (a) upon the appellants, Nella Reale and Joseph Reale, the wife and the son of the defendant. In their answers to these interrogatories, the appellants indicated that neither of them was in possession of nonexempt personal property belonging to the defendant. Thereafter, pursuant to § 52-351b (c) (2), the plaintiff filed postjudgment discovery petitions with the trial court, in which it sought orders allowing it to examine the appellants before a judge of the Superior Court regarding the appellants' knowledge of undisclosed assets of the defendant that might be available to satisfy the plaintiff's money judgment. Pursuant to § 52-351b (d), the appellants then sought protective orders to preclude any such discovery proceedings. After a hearing on the appellants' motions, the trial court sustained the plaintiff's objection thereto and ordered the appellants to submit to an examination by the plaintiff to be conducted before the court.

third person from annoyance, embarrassment, oppression or undue burden or expense. . . ."

The appellants appealed to the Appellate Court from the trial court's denial of their motions for protective orders. Concluding that the trial court had not rendered a final judgment, the Appellate Court dismissed the appeal. We granted the appellants' petition for certification to review the merits of that conclusion[2] and now affirm the judgment of the Appellate Court.

The principles that govern appellate jurisdiction are well established. "[T]he subject matter jurisdiction of the Appellate Court and of this court is governed by statute. *Grieco* v. *Zoning Commission*, 226 Conn. 230, 231, 627 A.2d 432 (1993). It is . . . axiomatic that, except insofar as the legislature has specifically provided for an interlocutory appeal or other form of interlocutory appellate review; see, e.g., General Statutes § 52-278*l* (prejudgment remedies); General Statutes § 54-63g (petition for review of bail); General Statutes § 51-164x (court closure orders); *State* v. *Ayala*, 222 Conn. 331, 340, 610 A.2d 1162 (1992); appellate jurisdiction is limited to final judgments of the trial court. General Statutes § 52-263[3] . . . ." *Waterbury Teachers Assn.* v. *Freedom of Information Commission*, 230 Conn. 441, 447, 645 A.2d 978 (1994).

[2] We granted certification, limited to the following issue: "If, in postjudgment proceedings, a judgment creditor seeks to examine nonparties to discover undisclosed assets of its judgment debtor, must an appeal by the nonparties from a trial court order denying their motions for protective orders be dismissed for lack of a final judgment?" *Presidential Capital Corp.* v. *Reale*, 237 Conn. 901, 902, 674 A.2d 1331 (1996).

[3] General Statutes § 52-263 provides: "Appeals from Superior Court. Exceptions. Upon the trial of all matters of fact in any cause or action in the Superior Court, whether to the court or jury, or before any judge thereof when the jurisdiction of any action or proceeding is vested in him, if either party is aggrieved by the decision of the court or judge upon any question or questions of law arising in the trial, including the denial of a motion to set aside a verdict, he may appeal to the court having jurisdiction from the final judgment of the court or of such judge, or from the decision of the court granting a motion to set aside a verdict, except in small claims cases, which shall not be appealable, and appeals as provided in sections 8-8 and 8-9."

To determine whether a trial court's denial of protective orders pursuant to § 52-351b (d) is a final judgment, we look to the standards established in *State* v. *Curcio*, 191 Conn. 27, 463 A.2d 566 (1983). In *Curcio*, we held that "[a]n otherwise interlocutory order is appealable in two circumstances: (1) where the order or action terminates a separate and distinct proceeding, or (2) where the order or action so concludes the rights of the parties that further proceedings cannot affect them." Id., 31. Because the appellants have raised no colorable claim that their appeal falls within the second prong of the *Curcio* test,[4] the only issue properly before us is whether the decision rendered by the trial court "terminate[d] a separate and distinct proceeding." We agree with the Appellate Court that it did not.

In the context of prejudgment orders, our case law firmly establishes that a witness in a trial court discovery proceeding is not entitled to immediate appellate review of a trial court's denial of a motion for a protective order. This result follows from the numerous decisions in which we have held that there is no right to an immediate appeal from an order issued upon a motion related to discovery. See, e.g., *Melia* v. *Hartford Fire Ins. Co.*, 202 Conn. 252, 255, 520 A.2d 605 (1987); *State* v. *Grotton*, 180 Conn. 290, 292, 429 A.2d 871 (1980); *Chrysler Credit Corp.* v. *Fairfield Chrysler-Plymouth, Inc.*, 180 Conn. 223, 226, 429 A.2d 478 (1980).

The appellants do not challenge the merits of this established case law but seek instead, on three grounds,

[4] The appellants do make a belated attempt to invoke the second prong of the *Curcio* test in their reply brief. We have, however, on a number of occasions observed "that arguments cannot be raised for the first time in a reply brief." *Saturn Construction Co.* v. *Premium Roofing Co.*, 238 Conn. 293, 312 n.14, 680 A.2d 1274 (1996). Application of this rule in the present case does no injustice to the appellants, whose conclusory arguments under the second prong of *Curcio* substantially replicate their lengthier arguments under the first prong. Under these circumstances, it is unnecessary for us to undertake a separate and distinct analysis where the appellants themselves have chosen not to do so.

to persuade us that their case is different. First, they claim that they are entitled to an immediate appeal because they are nonparties[5] to the underlying judgment and, therefore, will be deprived of the opportunity for later appellate review of allegedly improper discovery inquiries. Second, they claim that a trial court's order *denying* a protective order is immediately appealable because a trial court order *granting* a nonparty's motion for a protective order is immediately appealable. See *Commissioner of Health Services* v. *Kadish*, 17 Conn. App. 577, 554 A.2d 1097, cert. denied, 212 Conn. 806, 563 A.2d 1355 (1989) (reviewing order granting protective order). Third, they claim that, because § 52-351b expressly authorizes both postjudgment discovery and the issuance of a comprehensive protective order, the statute necessarily authorizes an immediate appeal, regardless of whether the trial court granted or denied the protective order. None of these arguments persuades us that the denial of a protective order with respect to postjudgment discovery, is, for appellate purposes, distinguishable from such an order with respect to prejudgment discovery. In *Curcio* terms, neither type of order "terminates" an ongoing judicial proceeding.

The appellants' argument that, because they are nonparty witnesses, they do not enjoy plenary appellate rights, articulates a concern that is shared by every witness who is reluctant to give testimony in a court of law. It is a given that, once disclosed through discovery, information cannot be retrieved. If that fact alone were sufficient to permit an immediate appeal of an order to comply with a discovery request or an order denying a protective order, every reluctant witness could delay

[5] In their briefs in this court, the appellants have consistently referred to themselves as nonparties. Although they were not parties to the underlying civil action, it is altogether possible that, for some purposes, they may be considered parties to the § 52-351b postjudgment proceeding. Because nothing in the present appeal turns on a choice of nomenclature, we have adopted the appellants' own usage throughout this opinion.

trial court proceedings by taking an interlocutory appeal. That is not our law. See *Melia* v. *Hartford Fire Ins. Co.*, supra, 202 Conn. 255; *Chrysler Credit Corp.* v. *Fairfield Chrysler-Plymouth, Inc.*, supra, 180 Conn. 226.

Significantly, the rule disallowing an immediate appeal applies even if the witness invokes his or her constitutional right not to testify. See *Barbato* v. *J. & M. Corp.*, 194 Conn. 245, 249, 478 A.2d 1020 (1984). In *Barbato*, we held that, if a witness asserts a privilege to withhold testimony to which the court and the parties may be entitled, and the court does not uphold that privilege, the witness' only access to appellate review is to appeal a finding of contempt. Id., 250. The scope of appellate review of such a contempt finding would be "sufficiently broad to encompass many claims of error which may not appear on their face to be jurisdictional in nature." (Internal quotation marks omitted.) Id., 250–51. Under *Barbato*, only a contempt finding, after refusal to respond to discovery, can properly be characterized as a final judgment. That path lies open to the appellants in this case.

In one exceptional case, as the appellants observe, we have nonetheless permitted an immediate appeal from the denial of a protective order relating to discovery. See *Lougee* v. *Grinnell*, 216 Conn. 483, 582 A.2d 456 (1990). In *Lougee*, a former employee of a party to a Texas lawsuit moved, in the trial court, to quash a subpoena to appear at a deposition in Connecticut. Id., 485. Without a plenary discussion of conflicting precedents, we concluded that the trial court's denial of the former employee's motion constituted an appealable final judgment. Id., 487. *Lougee* reflected the court's concern for the burdens potentially imposed on a nonparty witness called to respond to a discovery order arising out of a civil action that not only originated outside of Connecticut but could finally be resolved

only outside of Connecticut. No such concerns are present in this case.

The appellants similarly cannot prevail on the ground that their rights are properly measured by the appellate consequences that would follow if the order of the trial court had been to *grant,* rather than to *deny,* their motion for a protective order. A trial court order that quashes an investigative subpoena indubitably "terminates" the discovery proceeding that is at issue. See *Commissioner of Health Services* v. *Kadish,* supra, 17 Conn. App. 578 n.1. We have, accordingly, regularly undertaken appellate review of such an order. See, e.g., *Heslin* v. *Connecticut Law Clinic of Trantolo & Trantolo,* 190 Conn. 510, 461 A.2d 938 (1983); *In re Application of Ajello* v. *Moffie,* 179 Conn. 324, 426 A.2d 295 (1979). The finality that attaches to the quashing of a subpoena is not, however, transferable to an order that authorizes discovery to go forward. The opposite conclusion would be inconsistent with our final judgment decisions in related areas. We have never held, for example, that, because the *granting* of a motion for summary judgment is immediately appealable, the *denial* of such a motion is equally appealable. See *Aetna Casualty & Surety Co.* v. *Jones,* 220 Conn. 285, 295 n.12, 596 A.2d 414 (1991) (denial of summary judgment motion not immediately appealable).

The appellants' argument finally comes down to a question of statutory construction. The inclusion in § 52-351b (d) of an opportunity to request a protective order prior to submitting to discovery does not signal a legislative intent that the denial of such an order constitutes a final judgment. When the legislature has intended such a consequence in the context of postjudgment remedies, it has expressly so specified in the relevant text. See General Statutes §§ 52-362 (e) and 52-367b (i). It is reasonable to interpret the reference to a protective order in § 52-351b (d) as a manifestation

of legislative intent to provide for a witness in a post-judgment discovery proceeding the *same* opportunity to bypass discovery as is available to a witness in a prejudgment discovery proceeding. In the latter case, although protective orders may be sought, their denial is not immediately appealable. See *Barbato* v. *J. & M. Corp.*, supra, 194 Conn. 249; see also *North Carolina Assn. of Black Lawyers* v. *North Carolina Board of Law Examiners*, 538 F.2d 547, 548 (4th Cir. 1976) (refusal of district court to issue a protective order under Federal Rule of Civil Procedure 26 [c] not an appealable final judgment).

Considerations of policy support this construction of the statute. We recognize that all nonparty witnesses would prefer to appeal immediately rather than to run the risk of being found in contempt of court for failure to provide information to which the court and the parties arguably may not be entitled. There is no reason to believe, however, that the legislature intended § 52-351b (d) to afford nonparty witnesses, such as the appellants, more rights to appellate review than is normally afforded to others similarly situated.[6] The primary purpose of § 52-351b is, after all, to assist creditors in obtaining information concerning assets concealed by their judgment debtors. See Conn. Joint Standing Committee Hearings, Judiciary, Pt. 3, 1983 Sess., p. 1171, remarks of Raphael Podolsky ("[This bill] sets up some new systems for . . . gathering information from third

[6] At oral argument, the appellants contended that they were entitled, under § 52-351b, to an evidentiary hearing prior to the trial court's decision on their motion for a protective order. Under the circumstances of this case, we need not decide whether the text of § 52-351b can support this argument. As a procedural matter, the appellants conceded that they had failed to request such a hearing before the trial court. As a substantive matter, our resolution of the certified issue in this case does not turn on the amount of information the trial court considered before denying the motion for a protective order. The evidentiary basis for the trial court's decision goes to its propriety, not to its finality.

parties. I think those systems are good. They are desirable."). That primary purpose would not be advanced by interposing into postjudgment discovery proceedings the expense and the delay inevitably associated with the appellate process. More generally, we may presume that the legislature is cognizant of the limited resources available to the judicial branch and of the legislative role in the allocation of trial and appellate resources within the judicial branch. Without express provision for an immediate right of appeal, the legislature presumably did not intend to impose upon Connecticut's courts the significant burden that would be associated with unlimited appellate review of trial court orders denying protective orders to nonparty witnesses.

We conclude, therefore, that although § 52-351b creates a proceeding that is separate and distinct from the prior adjudication leading to the judgment debt, the denial of a protective order pursuant to § 52-351b (d) does not terminate this statutory proceeding. The trial court has yet to consider what requests for information, if any, it will direct the appellants to answer. The appellants have yet to decide what information, if any, they are unwilling or unable to provide. At this juncture, appellate review of the controversy between the plaintiff and the appellants is premature.

The judgment of the Appellate Court is affirmed.

In this opinion CALLAHAN, C. J., and MCDONALD, J., concurred.

BERDON, J., with whom, NORCOTT, J., joins, dissenting. I disagree with the majority's dismissal of this appeal for lack of a final judgment, where the appellants seek appellate review of what they argue was the trial court's improper denial of their statutory right to a protective order from an intrusive, and

potentially abusive, examination by the plaintiff.[1] Pursuant to General Statutes § 52-351b,[2] and General

[1] The trial court offered no reasons for its refusal to grant the motions for protective orders.

[2] General Statutes § 52-351b provides: "Discovery by judgment creditor. (a) A judgment creditor may obtain discovery from the judgment debtor, or from *any third person* he reasonably believes, in good faith, may have assets of the judgment debtor, or from any financial institution to the extent provided by this section, of any matters relevant to satisfaction of the money judgment. The judgment creditor shall commence any discovery proceeding by serving an initial set of interrogatories, in a prescribed form containing such questions as to the assets and employment of the judgment debtor as may be approved by the judges of the Superior Court or their designee, on the person from whom discovery is sought. Service of an initial set of interrogatories relevant to obtaining satisfaction of a money judgment of a small claims session of the Superior Court may be made, upon request of the judgment creditor, by the clerk of the court sending such interrogatories by certified mail, return receipt requested, to the person from whom discovery is sought, provided the judgment creditor pays to such clerk a fee of five dollars for each mailing requested. Questions contained in the interrogatory form shall be in clear and simple language and shall be placed on the page in such manner as to leave space under each question for the person served to insert his answer. Such person shall answer the interrogatories and return them to the judgment creditor within thirty days of the date of service. Interrogatories served on a judgment debtor shall be signed by such debtor under penalty of false statement. With respect to assets, the person served is required to reveal information concerning the amount, nature and location of the judgment debtor's nonexempt assets up to an amount clearly sufficient in value to ensure full satisfaction of the judgment with interest and costs, provided disclosure shall be first required as to assets subject to levy or foreclosure within the state. If interrogatories are served on a financial institution, the financial institution shall disclose only whether it holds funds of the judgment debtor on account and the balance of such funds, up to the amount necessary to satisfy the judgment.

"(b) The interrogatory form shall specify the names and last-known addresses of the judgment creditor and the judgment debtor, the court in which and the date on which the judgment was rendered, and the original amount of the judgment and the amount due thereon. The interrogatory form shall contain a notice of rights with respect to postjudgment interrogatories as prescribed by section 52-361b.

"(c) On failure of a person served with interrogatories to, within the thirty days, return a sufficient answer or disclose sufficient assets for execution, or on objection by such person to the interrogatories, the judgment creditor may move the court for such supplemental discovery orders as may be necessary to ensure disclosure including (1) an order for compliance with

Statutes § 52-400a (a),[3] a specific postjudgment statutory scheme, the appellants, Nella Reale and Joseph Reale, each sought protective orders to prevent them from having to shoulder the burden of being haled into court for an examination with respect to the assets of the defendant Antonio Reale, the judgment debtor. Although the appellants are the wife and son of the defendant, neither are parties to the underlying action nor are they indebted to the plaintiff.

In this case, the examination of the appellants was not a matter of right, but, rather, was subject to a separate and distinct proceeding in which the trial court was required to determine whether the appellants should be subject to an examination by the plaintiff or were entitled to have an order issued to protect them from "annoyance, embarrassment, oppression or undue burden or expense." General Statutes § 52-400a (a). For purposes of an appeal from an order such as the trial court entered in this case denying the appellant's motions for protective orders, *State* v. *Curcio*, 191 Conn. 27, 463 A.2d 566 (1983), provides the standard

the interrogatories or authorizing additional interrogatories and (2) an order for production or for examination of the judgment debtor or *third person*, provided any such examination shall be conducted before the court. The court may order such discovery as justice requires provided the order shall contain a notice that failure to comply therewith may subject the person served to being held in contempt of court.

"(d) *Any party from whom discovery is sought may seek a protective order pursuant to section 52-400a.*" (Emphasis added.)

[3] Section 52-351b, the statute pursuant to which the discovery order was authorized; see footnote 2; specifically provides, in subsection (d), for a separate proceeding in which the person from whom discovery is sought can obtain a protective order pursuant to General Statutes § 52-400a.

General Statutes § 52-400a (a) provides: "On motion of a judgment debtor or *third person* from whom discovery is sought, and for good cause shown, or on its own motion, the court may make any order which justice requires to protect such debtor or *third person* from annoyance, embarrassment, oppression or undue burden or expense." (Emphasis added.)

Practice Book § 236A contains a combination of General Statutes §§ 52-400a (a) and 52-351b (a) and (c), with practically the same language.

to determine whether it constituted a final judgment. In *Curcio*, we held that "[a]n otherwise interlocutory order is appealable in two circumstances: (1) where the order or action terminates a separate and distinct proceeding, or (2) where the order or action so concludes the rights of the parties that further proceedings cannot affect them." Id., 31. In my opinion this case meets the test of the first prong of *Curcio*.[4] The trial court's denial of the motions for protective orders, which resulted in requiring the appellants to submit to the examinations, constituted a final judgment under *Curcio* because it was instigated solely to test the propriety of their examination by the plaintiff in a proceeding independent of the central action against the defendant. Even the majority concludes that the statutory proceeding "is separate and distinct from the prior adjudication leading to the judgment debt . . . ."

I agree that this court has long held that a pretrial order directed to a party pertaining to discovery is generally not appealable. See, e.g., *Chrysler Credit Corp.* v. *Fairfield Chrysler-Plymouth, Inc.*, 180 Conn. 223, 226, 429 A.2d 478 (1980) ("[a]n order issued upon a motion for discovery is ordinarily not appealable because it does not constitute a final judgment"). This court pointed out in *Chrysler Credit Corp.* that if the trial court in such cases improperly orders discovery, then the issue "is reviewable upon appeal . . . after a trial on the merits has been concluded and a final judgment has been rendered." Id., 228.

The order challenged in this case differs from such pretrial orders as in *Chrysler Credit Corp.* in at least one important respect. The discovery authorized in the present case was predicated upon a special statutory

---

[4] As the majority concludes, the appellants did not adequately brief the second prong of the *Curcio* test because it was raised for the first time in their reply brief. See footnote 4 of the majority opinion.

proceeding that enabled the appellants, who were not parties to the underlying action, to challenge the appropriateness of allowing the plaintiff to obtain discovery from them in a proceeding that would not result in a later judgment from which the appellants could then appeal. Accordingly, we are not bound by the precedent of *Chrysler Credit Corp.*, and the trial court's order of discovery comes within the first prong of *Curcio*.

The case of *Lougee* v. *Grinnell*, 216 Conn. 483, 582 A.2d 456 (1990), is indistinguishable from the case now before us. In *Lougee*, the Superior Court denied the petitioner's motion to quash a subpoena and his application for a protective order with respect to a deposition the respondent sought of the petitioner pertaining to a civil action pending in Texas, in which the respondent was the plaintiff. Id., 484–86. In holding that the discovery order was appealable under the first prong of *Curcio*, this court stated that the "judicial proceeding instituted in Connecticut concerned the propriety of [the respondent's] deposition subpoena, a proceeding that will not result in a later judgment from which [the petitioner] can then appeal." (Internal quotation marks omitted.) Id., 487. The court concluded that "[b]ecause the separate and distinct judicial proceeding concerning [the respondent's] deposition subpoena terminated when the trial court issued the orders appealed, [the petitioner] has appealed from a final judgment . . . ." Id. This court then reviewed the merits of the petitioner's claims that the Superior Court improperly *denied* his motion to quash the subpoena and motion for protective order. Id., 487–91. The majority, labeling *Lougee* as an "exceptional" case,[5] is quick to dismiss this court's precedent.

---

[5] I am not sure what the majority means by an "exceptional" case. If by that the majority means that the 1990 precedent of *Lougee* is overruled, it should be candid about it and say so.

I make three preliminary observations with respect to *Lougee* and the present case: (1) the petitioner in *Lougee* was a nonparty witness, and the appellants in this case were also nonparty witnesses; (2) the petitioner in *Lougee* was called to respond to discovery, and the appellants in this case were also called to respond to discovery; (3) the litigation was initiated outside of Connecticut in *Lougee*, but, as the majority points out, this case involves Connecticut litigation. The majority relies on the latter distinction to distinguish *Lougee* from the present case, but its relevancy eludes me. The concerns that the majority claims were present in *Lougee* are no different than the concerns in this case. The appellants in this case, as well as the petitioner in *Lougee*, were subject to discovery proceedings in Connecticut. More importantly, the legislature has clearly drawn the lines of a distinct proceeding by providing a statutory framework applicable in this case in which the appellants can *initiate* a separate proceeding in order to challenge the propriety of subjecting them to a probing examination. No such legislative framework was provided in *Lougee*. Because the majority embraces *Lougee* and rejects jurisdiction in this case, I can only conclude that the majority's decision is result-oriented.[6]

Like the denial of the motion to quash in *Lougee*, the denial of the motions for protective orders in this case

[6] Furthermore, *Barbato* v. *J. & M. Corp.*, 194 Conn. 245, 478 A.2d 1020 (1984), is distinguishable from the present case. In *Barbato*, in the context of a tax investigation proceeding against a corporation, the court held that the denial of a motion to quash the state's application for a subpoena was not a final judgment under *Curcio*. Id., 248. The subpoena was directed to the president of the corporate taxpayer in order to have him testify before the Superior Court. Id., 246. Of course, a corporation cannot directly testify—it does so only through its corporate officers. In *Barbato*, the propriety of the tax investigation proceeding against the corporation was not challenged, nor had it reached a point where the proceeding was terminated. In the present case, neither of the appellants are parties to the action nor do they share any relationship with the defendant other than a marital or familial association.

determined whether the appellants were required to submit to the discovery, and this concluded the rights of the parties. In other words, the denial of the motions for protective orders was determinative of whether the discovery would annoy, embarrass, oppress or cause undue burden or expense to the appellants. General Statutes § 52-400a (a). The majority suggests that if the appellants wish to test the propriety of the trial court's decision, they must subject themselves to a finding of contempt of court and punishment for that contempt by refusing to answer. The legislature never intended that parties such as the appellants place themselves in a position of being held in contempt of court and punished with the possibility of imprisonment. The contempt route is a callous suggestion to the appellants in order for them to vindicate their privacy rights.

The majority has relegated the shield provided by the statutory scheme to an unreviewable decision of the trial court. The trial court's decision is insulated from review because once the appellants are compelled to submit to the discovery proceedings—being forced to enter the door of the courthouse, take the witness stand, and relinquish their right to privacy—any subsequent appeal to contest the propriety of that examination would be moot.

Accordingly, I dissent.