******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

McDONALD, J., concurring. I agree with the majority that the trial court's discovery order in this case is not an appealable final judgment under either prong of the test set forth in *State* v. *Curcio*, 191 Conn. 27, 31, 463 A.2d 566 (1993), and, therefore, that this court lacks subject matter jurisdiction over the writ of error. I write separately, however, because I disagree with the majority's analysis under the first prong of *Curcio*. Specifically, I disagree with the majority's effort to distinguish the present case from *Woodbury Knoll, LLC* v. *Shipman & Goodwin, LLP*, 305 Conn. 750, 48 A.3d 16 (2012) (*Woodbury Knoll*), on the ground that the discovery order in that case, unlike here, was not intertwined with the underlying action. An examination of the facts in the two cases makes it abundantly clear that the discovery order in *Woodbury Knoll* was as intertwined with the underlying action as the order in the present case. Therefore, this court has two choices: either treat the discovery order in the present case consistently with the order in *Woodbury Knoll* as an appealable final judgment, or, reconsider *Woodbury Knoll*. I would choose the second course of action, as it is my view that *Woodbury Knoll* improperly expanded the narrow exception to the general prohibition against interlocutory appeals from discovery orders that our prior cases had recognized. Accordingly, I would overrule *Woodbury Knoll*.

This court has consistently held that "[a]n order issued upon a motion for discovery is ordinarily not appealable because it does not constitute a final judgment, at least in civil actions." (Internal quotation marks omitted.) *Green Rock Ridge, Inc.* v. *Kobernat*, 250 Conn. 488, 498, 736 A.2d 851 (1999); see also *Presidential Capital Corp.* v. *Reale*, 240 Conn. 623, 625, 692 A.2d 794 (1997); *Chrysler Credit Corp.* v. *Fairfield Chrysler-Plymouth, Inc.*, 180 Conn. 223, 226, 429 A.2d 478 (1980). Such orders do not satisfy the first prong of *Curcio* because they are not "severable from the central cause of action so that the main action can proceed independent of the ancillary proceeding"; (internal quotation marks omitted) *Abreu* v. *Leone*, 291 Conn. 332, 339, 968 A.2d 385 (2009); and they do not satisfy the second prong of *Curcio* because the trial court's determination "does not so conclude the rights of the appealing party that further proceedings cannot affect those rights." (Internal quotation marks omitted.) *Barbato* v. *J. & M. Corp.*, 194 Conn. 245, 249, 478 A.2d 1020 (1984). As such, "[w]e require that those ordered to comply with discovery be found in contempt of court before we consider an appeal . . . ." (Internal quotation marks omitted.) *Green Rock Ridge, Inc.* v. *Kobernat*, supra, 498; *Barbato* v. *J. & M. Corp.*, supra, 249; see also *Abreu* v. *Leone*, supra, 346 ("an order issued upon a motion

for discovery ordinarily is not appealable because it does not constitute a final judgment, and . . . a witness' only access to appellate review is to appeal a finding of contempt"). "Significantly, the rule disallowing an immediate appeal applies even if the witness invokes his or her constitutional right not to testify. . . . The scope of appellate review of . . . a contempt finding would be sufficiently broad to encompass many claims of error which may not appear on their face to be jurisdictional in nature." (Citations omitted; internal quotation marks omitted.) *Presidential Capital Corp.* v. *Reale*, supra, 630.

This court, however, has recognized that appeals from discovery disputes "are more fact specific than would appear at first blush"; *Abreu* v. *Leone*, supra, 291 Conn. 346; and thus has articulated certain limited exceptions to this general rule precluding interlocutory appeals from discovery orders. Id., 346–47; *Lougee* v. *Grinnell*, 216 Conn. 483, 486–87, 582 A.2d 456 (1990), overruled in part on other grounds by *State* v. *Salmon*, 250 Conn. 147, 154–55, 735 A.2d 333 (1999) (en banc).

For example, in *Lougee* v. *Grinnell*, supra, 216 Conn. 487, this court concluded that the trial court's denial of a nonparty witness' motion to quash a subpoena to appear at a deposition in Connecticut regarding a Texas civil action was an appealable final judgment under the first prong of *Curcio*. In *Lougee*, the underlying action had been filed in Texas against the American Tobacco Company (American) by the respondent, Jeannie B. Grinnell. Id., 484–85. After the commencement of the action, Grinnell sought to depose the petitioner, Virginius B. Lougee, a former chief executive officer of American. Id. After the Texas trial court determined that American could not be compelled to produce Lougee, Grinnell obtained an order from the Texas court commissioning a Connecticut notary public to depose Lougee as a material witness in Connecticut. Id., 485–86. The trial court in Connecticut thereafter authorized the issuance of a subpoena compelling Lougee's appearance. Lougee unsuccessfully moved to quash the subpoena in the trial court, and subsequently appealed from that court's order. Id., 486.

On appeal, this court concluded that the appeal fell within the first prong of *Curcio* because the separate and distinct judicial proceeding concerning Grinnell's deposition subpoena had terminated when the trial court issued the order that was appealed. Id., 487. In support of its conclusion, this court focused on the Connecticut trial court proceeding on Lougee's motion, rather than the Texas litigation, and recognized that "the sole judicial proceeding instituted in Connecticut concerned the propriety of Grinnell's deposition subpoena, a proceeding that will not result in a later judgment from which [Lougee] can then appeal. . . . Because the separate and distinct judicial proceeding

concerning Grinnell's deposition subpoena terminated when the trial court issued the orders appealed, Lougee has appealed from a final judgment . . . ." (Citations omitted; internal quotation marks omitted.) Id.

This court established another exception in *Abreu* v. *Leone*, supra, 291 Conn. 334. The genesis of the appeal in *Abreu* began when the defendant sought permission from the Claims Commissioner to bring an action against the Department of Children and Families (department) for personal injuries allegedly inflicted by the plaintiff's foster child. Pursuant to that action, the defendant issued the plaintiff a notice of deposition and a subpoena duces tecum, apparently seeking information about the foster child. Id., 334–35. The plaintiff then filed an action seeking to quash the subpoena issued in the proceeding before the Claims Commissioner on the ground that he was prohibited, under General Statutes (Rev. to 2005) § 17a-28, from disclosing information about the foster child. Id., 335. The department intervened as a party plaintiff and filed a brief in support of the plaintiff's position. Id. The trial court held that the plaintiff was statutorily prohibited from testifying about his foster child, but allowed the deposition to proceed so the defendant could seek other information. Id. At the plaintiff's deposition, he declined to answer certain questions. Id., 336. Counsel for the defendant then read the questions into the record and the plaintiff and the department placed their objections on the record. Id. Subsequently, the trial court ordered the plaintiff to answer the questions. Id., 337. The department appealed from that ruling to the Appellate Court, which dismissed the appeal for lack of a final judgment. Id., 338.

On appeal to this court, we reversed the judgment of the Appellate Court, and concluded that the trial court's order compelling the plaintiff to answer the defendant's questions was an appealable final judgment under the first prong of *Curcio*. Id., 341. There were three primary reasons supporting our decision. First, unlike the situations in *Barbato* v. *J. & M. Corp.*, supra, 194 Conn. 248, and *Presidential Capital Corp.* v. *Reale*, supra, 240 Conn. 633, there were no further proceedings before the trial court because the court had ordered the plaintiff to provide specific information and the plaintiff had clearly refused to provide that information.[1] *Abreu* v. *Leone*, supra, 291 Conn. 346. Therefore, "[i]n essence, the defendant [was] forcing the plaintiff to be held in contempt." Id., 347. Second, the particular facts and circumstances of the case presented a "counterbalancing factor" that weighed against the policies underlying the final judgment rule, namely, the prevention of piecemeal appeals and the conservation of judicial resources. Id., 347. Specifically, the court noted that to hold the plaintiff in contempt "would discourage participation by otherwise willing foster parents and thus undermine the goals of that system," while forcing

him to answer the questions would subject his foster child to "embarrassment, stigmatization and emotional harm." Id., 348. Third, the motion to quash was the sole judicial proceeding at issue in the case and the only legal proceeding from which the plaintiff and the department would have a right to seek appellate review as the underlying action was not a judicial proceeding and indeed might not even result in one, thus leaving the plaintiff without the ability to file a writ of error and the department without a right to appeal.[2] Id., 349.

In addition to these cases, to put the issue before us in its proper context, we also briefly address this court's decision in *Briggs* v. *McWeeny*, 260 Conn. 296, 796 A.2d 516 (2002). In *Briggs*, this court concluded that a trial court's order disqualifying counsel for the plaintiff school board from representing the plaintiff in pending litigation due to certain misconduct in that litigation constituted a final judgment under the first prong of *Curcio*. Id., 314. Although the fact that the litigation continued unimpeded following the sanction indicated that the order terminated a separate and distinct proceeding, the court considered Judge McWeeny's contention that the misconduct "was so intertwined with the central issue in the [pending] litigation . . . that the disqualification order could not be considered separate and distinct from the main proceeding." Id. The court rejected that contention, reasoning that the focus of the disqualification proceeding was on a different issue than the one raised in the litigation and pointing to the fact that the sanction took effect immediately. Id., 316.

Finally, I turn to *Woodbury Knoll, LLC* v. *Shipman & Goodwin, LLP*, supra, 305 Conn. 750, which presents the crux of my disagreement with the majority's reasoning in the present case. In *Woodbury Knoll*, the plaintiffs in the underlying action hired the plaintiff in error, Finn, Dixon & Herling, LLP (Finn Dixon), to bring a legal malpractice action against the defendants in error, Shipman & Goodwin, LLP, and Carolyn Cavolo, for negligent representation in failing to discover fraudulent conduct in connection with certain real estate transactions. Id., 752–53. In the malpractice action, the plaintiffs alleged that, as a result of the defendants' negligent representation, the plaintiffs were subject to numerous foreclosure actions and related legal proceedings in which Finn Dixon represented them. Id., 753. As a result, the plaintiffs allegedly "incurred damages of $4,288,674.60, which consisted of settlement payments in the amount of $2,917,000 and attorney's fees paid to Finn Dixon in the amount of $1,371,647.60, for which they [sought] reimbursement from the defendants." Id.

The defendants subsequently served a notice of deposition and a subpoena duces tecum on the custodian of Finn Dixon's records, seeking information to substantiate the plaintiffs' damages claim against the defendants, specifically, all records and documents relating

to Finn Dixon's representation of the plaintiffs throughout the foreclosure actions and related legal proceedings up to the date of the subpoena. Id. Finn Dixon and the plaintiffs moved to quash the subpoena and for protective orders, claiming, inter alia, that much of the material requested was covered by the attorney-client privilege and the work product doctrine. Id., 753–54. The defendants objected and moved to compel production of the documents. Id., 754. The trial court overruled Finn Dixon's objection to the subpoena, denied its motion to quash, and granted the defendants' motion to compel. Id.

Thereafter, Finn Dixon brought a writ of error to this court, claiming that the trial court improperly denied its motion to quash. Id. As a jurisdictional matter, this court concluded that the trial court's discovery order was an appealable final judgment under the first prong of *Curcio* because it arose out of a separate proceeding brought by a nonparty to the underlying action. Id., 762. In support of this conclusion, the court first noted that the circumstances in that case were governed by *Abreu* v. *Leone*, supra, 291 Conn. 332, and that the situation was identical in all material respects to *Abreu*. *Woodbury Knoll, LLC* v. *Shipman & Goodwin, LLP*, supra, 305 Conn. 757, 761. The court then reasoned that, like the appellant in *Abreu*, Finn Dixon "challenged a clear and definite discovery order, which was based on the trial court's final and comprehensive ruling, and [Finn Dixon] perfected the record for appeal. . . . Under these circumstances, there are no further proceedings before the Superior Court involving the [person or persons subject to the discovery order] because the questions have been propounded and the trial court has unequivocally ruled what must occur, that is, the discovery order must be complied with, which, in turn, terminates a separate and distinct proceeding." (Citation omitted; internal quotation marks omitted.) Id., 761. The court further reasoned that "in both cases, the appellant or plaintiff in error is a nonparty to the underlying action. In *Abreu*, the nonparty foster parent challenged, as a plaintiff in a separate proceeding, a discovery order that arose in a case between two other parties. . . . Similarly in the present case, Finn Dixon is not involved in any way with the lawsuit between the plaintiffs and the defendants. Finn Dixon is involved only insofar as its records custodian has been ordered to comply with the discovery order." (Citation omitted.) Id., 761–62. In light of these circumstances, the court held that "[f]or these reasons alone, then, the discovery order in the present case is a final judgment because it satisfies the first prong of *Curcio*, just as the discovery order in *Abreu* constituted a final judgment because it arose out of a separate proceeding brought by a nonparty." Id., 762.

The court then went on to note that, as in *Abreu*, there were compelling policy reasons why Finn Dixon

should not be required to be held in contempt in order to appeal from the discovery order. Specifically, this court noted that Finn Dixon had an ethical and professional obligation not to disclose privileged and confidential materials relating to the representation of its clients. Id., 763. The court reasoned that if the discovery order was not immediately appealable, Finn Dixon, as an officer of the court, would be left with a real dilemma: comply with the court order and breach its clients' privileges and confidences, or defy the court order and be held in contempt, the latter action requiring Finn Dixon to violate the Rules of Professional Conduct. Id., 763–66.

In sum, *Woodbury Knoll* held that a discovery order is an appealable final judgment when it is clear and definite, based on a final and comprehensive ruling, and the appellant or plaintiff in error is a nonparty to the underlying action. See id., 761. Furthermore, this rule is not limited to nonparty attorneys because, despite the court's discussion of Finn Dixon's professional and ethical obligations to its clients, these policy considerations were extraneous to the court's conclusion that the discovery order was an appealable final judgment. See id., 762 ("[f]or these reasons alone, then, the discovery order in the present case is a final judgment because it satisfies the first prong of *Curcio*, just as the discovery order in *Abreu* constituted a final judgment because it arose out of a separate proceeding brought by a *nonparty*" [emphasis added]).

Turning to the present case, I would conclude that the situation presented here satisfies the rule articulated in *Woodbury Knoll*. First, the trial court's order granting the motion filed by the defendant in error, Sandy Niro (defendant), for production of the personal records of the plaintiffs in error, Anthony Niro and Nanette Niro (plaintiffs), was a clear and definite order based upon a final and comprehensive ruling because the information sought had been clearly identified and the plaintiffs had clearly refused to produce it. Second, the plaintiffs are nonparties to the underlying dissolution action because they are "not involved in any way with the lawsuit between [Peter Niro, Jr., and the defendant]." Id.

Faithfully applying the rule in *Woodbury Knoll* would necessarily require us to conclude that the discovery order in the present case is an appealable final judgment under the first prong of *Curcio*. The majority, however, avoids this conclusion by distinguishing *Woodbury Knoll* on a ground not discussed in that case, namely, that the discovery order in *Woodbury Knoll* was not intertwined with the underlying action. The majority holds that "[t]he discovery order in the present case, unlike the orders in *Woodbury Knoll* . . . and *Briggs*, is intertwined with the underlying dissolution proceeding because the information subject to disclosure will contribute to the trial court's knowledge of Peter Niro's

assets and its ability to perform its statutory duty of distributing the marital estate pursuant to [General Statutes] § 46b-81." The majority further notes: "Although the court did not discuss whether the information sought in the discovery order [in *Woodbury Knoll*] was 'intertwined' with the underlying proceeding, we note that, because [the plaintiff in *Woodbury Knoll*] was seeking damages for expenses already incurred, the court did not need the information subject to the order to resolve the issues in the underlying legal malpractice action. Accordingly, the discovery order in *Woodbury Knoll* . . . was not intertwined with the underlying proceeding." See footnote 4 of the majority opinion.

The record in *Woodbury Knoll* does not support that proposition. Instead, it reveals that the discovery order was organically and fundamentally intertwined with the underlying action and that the trial court did require the information to resolve the issues in that case. In its articulation of the legal basis for its discovery order, the trial court in *Woodbury Knoll* noted "that the information sought [by the defendants] is essential and cannot be otherwise obtained and that its disclosure can lead to the discovery of information material to the claims and defenses of the parties." The trial court further articulated that "the plaintiffs specifically place at issue their decision to settle the referenced foreclosure actions by seeking as damages the amounts voluntarily paid along with associated legal fees." As such, the information sought was necessary for the trial court to answer the following questions: "Were such legal fees reasonable? Were they generated in unrelated . . . lawsuits? Were such settlements unreasonable and unnecessary in light of a valid defense based on [the fraudulent opposing party's] lack of authority? Was the plaintiffs' own negligence a factor in settlement?" Lastly, while not using the term "intertwined," the trial court noted that "[t]hese are all issues *integral* to the outcome of this case. The discovery sought from [Finn Dixon] is relevant to these issues and likely to lead to the discovery of admissible evidence." (Emphasis added.) On the basis of the trial court's articulation, it is clear that the discovery order in *Woodbury Knoll* was intertwined with the underlying action. Accordingly, I disagree with the majority that *Woodbury Knoll* is distinguishable from the present case. We are left, then, with two choices: apply *Woodbury Knoll* and conclude that the discovery order in the present case is a final judgment, or overrule *Woodbury Knoll* and conclude that the discovery order in the present case is not a final judgment.

After careful consideration of *Woodbury Knoll* and the rest of our final judgment jurisprudence, I am convinced that the court in that case misinterpreted the holding of *Abreu* and, in so doing, unnecessarily expanded a limited exception to create a misleading rule with vast implications. I recognize that "[t]his court

has repeatedly acknowledged the significance of stare decisis to our system of jurisprudence because it gives stability and continuity to our case law." *Conway* v. *Wilton*, 238 Conn. 653, 658, 680 A.2d 242 (1996). However, "[i]t is more important that the court should be right upon later and more elaborate consideration of the cases than consistent with previous declarations. *Barden* v. *Northern Pacific R. Co.*, 154 U.S. 288, 322, 14 S. Ct. 1030, 38 L. Ed. 992 (1894). [T]here is a well recognized exception to stare decisis under which a court will examine and overrule a prior decision that is clearly wrong. *White* v. *Burns*, 213 Conn. 307, 335, 567 A.2d 1195 (1990). In short, consistency must not be the only reason for deciding a case in a particular way, if to do so would be unjust. Consistency obtains its value best when it promotes a just decision. *Conway* v. *Wilton*, supra, 662." (Internal quotation marks omitted.) *State* v. *Miranda*, 274 Conn. 727, 734, 878 A.2d 1118 (2005).

Although this court in *Woodbury Knoll* relied upon *Abreu* to articulate the rule that a discovery order is an appealable final judgment under the first prong of *Curcio* if the order is clear and definite, based on a final and comprehensive ruling, and the appellant or plaintiff in error are nonparties to the underlying action, *Abreu* is distinguishable from the facts in *Woodbury Knoll* in two ways. First, although the trial court's order in *Abreu* was clear and definite and based upon a final and comprehensive ruling, we emphasized in our reasoning that (1) the plaintiff had instituted an action separate from the underlying proceeding to file his motion to quash, and (2) because the underlying proceeding before the Claims Commissioner was not a judicial proceeding, the plaintiff would not likely have the ability to file a writ of error and the department may never have a right to appeal. See *Abreu* v. *Leone*, supra, 291 Conn. 348–49. These concerns were simply not present in *Woodbury Knoll*, as Finn Dixon challenged the defendants' subpoena duces tecum within the underlying proceeding and that proceeding was a judicial proceeding from which Finn Dixon could have later filed a writ of error once it was held in contempt or there was a final judgment on the merits. See Practice Book § 72-1 (a) ("[w]rits of error for errors in matters of law only may be brought from a final judgment of the superior court to the supreme court in the following cases: [1] a decision binding on an aggrieved nonparty"). Second, a plain reading of *Abreu* shows that the counterbalancing factors to the policy underlying the final judgment rule were integral to this court's decision to make an exception to the general prohibition against interlocutory appeals from discovery orders. Indeed, I agree with the dissent in *Woodbury Knoll* that "under *Abreu*, a person may bring an immediate appeal from a discovery order only if: (1) the order threatens an important public policy that provides a 'counter-balanc-

ing factor' to the policies underlying the final judgment rule; *Abreu* v. *Leone*, supra, 291 Conn. 347; and (2) [the procedural posture of the case is such that] the party attempting to bring the appeal would not have a later opportunity to challenge the order. Id., 348 . . . ." (Citation omitted.) *Woodbury Knoll, LLC* v. *Shipman & Goodwin, LLP*, supra, 305 Conn. 792–93 (*Eveleigh, J.*, dissenting). The court in *Abreu* emphasized that, in light of the particular circumstances in that case, requiring a contempt finding as a predicate to appellate review would undermine the child welfare system. *Abreu* v. *Leone*, supra, 348. Thus, *Abreu* mandates immediate appellate review only when there are such compelling public policy considerations. Id.; *Woodbury Knoll, LLC* v. *Shipman & Goodwin, LLP*, supra, 791 (*Eveleigh, J.*, dissenting). Therefore, although the court in *Woodbury Knoll* went to great lengths to explain that there are compelling policy reasons why an attorney should not be required to disobey a court order in order to trigger appellate review of a discovery order, it then held that these policy considerations were not necessary to satisfy the first prong of *Curcio*. See *Woodbury Knoll, LLC* v. *Shipman & Goodwin, LLP*, supra, 762. Accordingly, on the basis of the rule articulated in *Woodbury Knoll*, I am not persuaded that the discovery order in that case was "severable from the central cause of action so that the main action [could] proceed independent of the ancillary proceeding"; (internal quotation marks omitted) *Abreu* v. *Leone*, supra, 339; and, as such, this court was clearly wrong when it expanded the limited exception articulated in *Abreu*.

Furthermore, left untouched, the rule articulated in *Woodbury Knoll* could be applied in a broad manner to allow for immediate appeals of a significant portion of the discovery orders entered by the trial courts in this state. Because this court has indicated that a consideration of the interests of an attorney in preserving the confidential and privileged materials of his or her clients is not necessary to satisfy the first prong of *Curcio*, it necessarily follows then that *any* nonparty to an underlying action, upon receiving a clear and definite order in a final and comprehensive ruling, can immediately appeal that order. This notion runs counter to the well established rule that discovery orders do not satisfy the first prong of *Curcio* because they are not "severable from the central cause of action so that the main action can proceed independent of the ancillary proceeding." (Internal quotation marks omitted.) *Abreu* v. *Leone*, supra, 291 Conn. 339; see also *Ruggiero* v. *Fuessenich*, 237 Conn. 339, 345–46, 676 A.2d 1367 (1996) ("[a] party to a pending case does not institute a separate and distinct proceeding merely by filing a petition for discovery or other relief that will be helpful in the preparation and prosecution of that case"). As the dissent in *Woodbury Knoll* noted, discovery orders directed at nonparties are an extremely frequent occur-

rence in civil cases. As a result, this rule could yield a plethora of discovery order appeals. See *Woodbury Knoll, LLC* v. *Shipman & Goodwin, LLP*, supra, 305 Conn. 804 (*Eveleigh, J.*, dissenting). I would conclude, therefore, that we are compelled to overrule *Woodbury Knoll*.

Having concluded that *Woodbury Knoll* must be overruled, I consider whether under a proper application of our precedent, the order in the present case satisfies either prong of *Curcio*. I agree with the majority that the trial court's discovery order did not arise from a separate and distinct proceeding. Specifically, I would conclude that the personal records and documents to which it was directed are intertwined with the underlying action, as they are required by the trial court to resolve the underlying action. See *Briggs* v. *McWeeny*, supra, 260 Conn. 316; cf. *Palmer* v. *Friendly Ice Cream Corp.*, 285 Conn. 462, 472, 940 A.2d 742 (2008) (concluding that denial of class certification does not constitute termination of separate and distinct proceeding because it is too intertwined with plaintiffs' cause of action and is order capable of review after final judgment in that action). For this reason alone, the discovery order cannot be severed from the central cause of action so that the main action can proceed independent of the ancillary proceeding. Further, none of the very limited exceptions that this court has developed are applicable to the facts of the present case. The proceeding from which the plaintiffs filed their writ of error is not the sole judicial proceeding instituted in Connecticut that stems from an action in another jurisdiction; see *Lougee* v. *Grinnell*, supra, 216 Conn. 486–87; and there are no counterbalancing policy factors present. See *Abreu* v. *Leone*, supra, 291 Conn. 347–48. Moreover, "[i]t is a given that, once disclosed through discovery, information cannot be retrieved. If that fact alone were sufficient to permit an immediate appeal of an order to comply with a discovery request or an order denying a protective order, every reluctant witness could delay trial court proceedings by taking an interlocutory appeal. That is not our law." *Presidential Capital Corp.* v. *Reale,* supra, 240 Conn. 629–30. As such, although the potential for unwarranted disclosure and irremediable harm exists in situations like in the present case, where a plaintiff in error has invoked a privilege against complying with a discovery order, unless there is a counterbalancing policy factor present, "the occasional [improper discovery ruling] that cannot be fully rectified upon review of the final judgment is a lesser evil than that posed by the delay in the progress of cases in the trial court likely to result from interlocutory appeals of disclosure orders." *Melia* v. *Hartford Fire Ins. Co.*, 202 Conn. 252, 259, 520 A.2d 605 (1987).

I therefore respectfully concur in the judgment.

[1] The court noted that in both *Barbato* and *Presidential Capital Corp.*, "the party '[had] not yet appeared before the trial court to answer any

questions'; *Barbato* v. *J. & M. Corp.*, supra, 194 Conn. 248–49; and 'the trial court [had] yet to consider what requests for information, if any, it will direct the appellants to answer.' *Presidential Capital Corp.* v. *Reale*, supra, 240 Conn. 633." *Abreu* v. *Leone*, supra, 291 Conn. 345.

[2] The court also noted that the trial court's order had "terminated a separate and distinct proceeding concluding the *department's* rights . . . that further proceedings could not remedy . . . because the department . . . [could not] force the plaintiff to . . . defy the court order, and thus be held in contempt, so that *the department's* concerns finally can be addressed through the appellate process." (Emphasis in original.) *Abreu* v. *Leone*, supra, 291 Conn. 348. I recognize that this reasoning appears to conflate the first and second prongs of *Curcio*. It is well established that a ruling that so concludes a person's rights that further proceedings cannot affect them implicates the second prong of *Curcio*, not the first prong. Id., 339. This language, however, when viewed in the context of the court's holding, appears to be mere dictum because the court expressly concluded that the discovery order satisfied the first prong of *Curcio*. See id., 341 ("[W]e conclude that the first *Curcio* prong is satisfied. . . . In light of this conclusion, we need not address the parties' arguments regarding the second prong of *Curcio*.").

---